## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**GERALD PETERS,**

     **Plaintiff,**

**v.**                              **No.  6:21-cv-564**

**JOSEPH FRONTIERE, NICHOLAS FRONTIERE,
MICHAEL GHISELLI, ALEXANDER AIZENSHTADT
JOSEPH CELLURA, and TARSIN MOBILE, INC.,**

     **Defendants,**

**JOSEPH FRONTIERE,**

     **Cross-claimant,**

**v.**

**MICHAEL GHISELLI, JOSEPH CELLURA,
and TARSIN MOBILE, INC.,**

     **Crossclaim Defendants.**

## DEFENDANT JOSEPH FRONTIERE'S ANSWER TO
## COMPLAINT FOR DAMAGES, ACCOUNTING, AND CONSTRUCTIVE
## TRUST AND CROSSCLAIMS

     Defendant Joseph Frontiere ("Mr. Frontiere" or "Defendant"), by and through his attorneys of record, Hinkle Shanor, LLP, and for his Answer to Plaintiffs' Complaint for Damages, Accounting, and Constructive Trust ("Complaint"), states as follows:

## ANSWER

### Response to Parties, Jurisdiction and Venue

     1.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint and, therefore, denies the same.

2.      Defendant admits the allegations contained in paragraph 2 of the Complaint.

3.      Defendant admits in part the allegations contained in paragraph 3 of the Complaint. Defendant admits that he was raised in Santa Fe County, and that his brother, Nicholas Frontiere, was also raised in Santa Fe County. Defendant denies all remaining allegations contained in paragraph 3.

4.      Defendant admits that, upon information and belief, Michael Ghiselli serves as an officer and agent of Tarsin Mobile, Inc. ("TMIX"). Defendant is without information sufficient to form a belief as to the remaining allegations contained in paragraph 4.

5.      Defendant admits that, upon information and belief, Joseph Cellura serves as an officer and agent of TMIX. Defendant is without information sufficient to form a belief as to the remaining allegations contained in paragraph 5.

6.      Defendant admits that Alexandra Aizenshtadt is a foreign national. Defendant denies the remaining allegations contained in paragraph 6 of the Complaint.

7.      Defendant admits this Court has subject matter jurisdiction in this case. but denies the remaining allegations contained in paragraph 7 of the Complaint.

8.      Defendant admits this Court has personal jurisdiction over all the parties, but denies the remaining allegations contained in paragraph 8 of the Complaint.

9.      Defendant admit the allegations contained in paragraph 9 of the Complaint.

**Response to Allegations Common to All Claims**

10.      The allegations contained in Paragraph 10 of the Complaint are legal assertions to which no response is required. To the extent a response is required, Defendant is without information sufficient to form a belief as to whether Mr. Peters ever received stock and therefore

denies the same. Defendant denies the remaining allegations contained in paragraph 10 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

11.    Defendant admits the allegations contained in paragraph 11 of the Complaint.

12.    Defendant denies that he "looked to Mr. Peters for advice on business" matters on any kind of regular basis. Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint and, therefore, denies the same.

13.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and, therefore, denies the same

14.    Defendant denies the allegations contained in paragraph 14 of the Complaint.

15.    Defendant admits that he contacted Mr. Peters about TMIX and met with Mr. Peters during a lunch meeting on July 15, 2019. Defendant denies all remaining allegations contained in paragraph 15 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

16.    Defendant denies the allegations contained in paragraph 16 of the Complaint.

17.    Defendant denies the allegations contained in paragraph 17 of the Complaint to the extent those allegations are directed against Mr. Frontiere.

18.    Defendant admits sending the plaintiff an investor slide deck that he had been provided by TMIX. Defendant denies all remaining allegations contained in paragraph 18 of the Complaint.

19.    Defendant admits the investor slide deck lists Mr. Frontiere as a Corporate Finance Director. Defendant denies the remaining allegations in paragraph 19 of the Complaint to the extent they are directed at Mr. Frontiere.

20.    Defendant denies the allegations contained in paragraph 20 of the Complaint to the extent they are directed at Mr. Frontiere.

21.    Defendant admits forwarding the plaintiff the promissory note from TMIX. Defendant is without information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21 of the Complaint and, therefore, denies the same.

22.    Defendant states that the Promissory Note speaks for itself. Defendant denies the remaining allegations contained in paragraph 22 of the Complaint to the extent those allegations are directed against Mr. Frontiere.

23.    Defendant admits sending Mr. Peters the Common Stock Purchase Warrant. Defendant is without information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23 of the Complaint and, therefore, denies the same.

24.    Defendant denies the allegations contained in paragraph 24 of the Complaint.

25.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint and, therefore, denies the same.

26.    Defendant denies the allegations contained in paragraph 26 of the Complaint.

27.    Defendant denies the allegations contained in paragraph 27 of the Complaint.

28.    Defendant denies the allegations contained in paragraph 28 of the Complaint.

29.    Defendant denies the allegations contained in paragraph 29 of the Complaint.

30.    Defendant admits that he met Mr. Peters for lunch at Rio Chama in Santa Fe, New Mexico. Defendant denies that he made any of the alleged representations to Plaintiff described in paragraph 30. Defendant is without information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30 of the Complaint and, therefore, denies the same.

4

31.     Defendant admits meeting with Mr. Peters at Mr. Peters' home the following day.

32.     Defendant denies the allegations contained in paragraph 32 of the Complaint to the extent they are directed at Mr. Frontiere.

33.     Defendant denies the allegations contained in paragraph 33 of the Complaint to the extent they are directed at Mr. Frontiere.

34.     Defendant denies the allegations contained in paragraph 34 of the Complaint to the extent they are directed at Mr. Frontiere.

35.     Defendant denies the allegations contained in paragraph 35 of the Complaint to the extent they are directed at Mr. Frontiere. Defendant denies being present in Santa Fe, New Mexico on September 22, 2019.

36.     Defendant denies the allegations contained in paragraph 36 of the Complaint to the extent they are directed at Mr. Frontiere.

37.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint and, therefore, denies the same.

38.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint and, therefore, denies the same.

39.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint and, therefore, denies the same.

40.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint and, therefore, denies the same.

41.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of the Complaint and, therefore, denies the same.

42.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint and, therefore, denies the same.

43.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint and, therefore, denies the same.

44.     The allegations set forth in paragraph 44 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 44 of the Complaint to the extent they are directed at Mr. Frontiere.

45.     The allegations set forth in paragraph 45 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 45 of the Complaint to the extent they are directed at Mr. Frontiere.

46.     The allegations set forth in paragraph 46 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 46 of the Complaint to the extent they are directed at Mr. Frontiere.

47.     The allegations set forth in paragraph 47 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 47 of the Complaint to the extent they are directed at Mr. Frontiere.

48.     The allegations set forth in paragraph 48 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant

denies the allegations contained in paragraph 48 of the Complaint to the extent they are directed at Mr. Frontiere.

49.    Defendant denies the allegations contained in paragraph 49 of the Complaint to the extent they are directed at Mr. Frontiere.

50.    Defendant denies the allegations contained in paragraph 50 of the Complaint to the extent they are directed at Mr. Frontiere.

51.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint and, therefore, denies the same.

**Response to Count I**
**New Mexico Securities Fraud**

52.    In response to paragraph 52 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

53.    Defendant denies the allegations contained in paragraph 53 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

54.    Defendant denies the allegations contained in paragraph 54 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

55.    Defendant denies the allegations contained in paragraph 55 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

56.    Defendant denies the allegations contained in paragraph 56 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

57.    Defendant denies the allegations contained in paragraph 57 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

58.     Defendant denies the allegations contained in paragraph 58 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

59.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 59 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

60.     Defendant denies the allegations contained in paragraph 60 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

61.     Defendant denies the allegations contained in paragraph 61 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

62.     The allegations set forth in paragraph 62 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 48 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

63.     Defendant denies the allegations contained in paragraph 63 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

**Response to Count II**
**Common Law Fraud**

64.     In response to paragraph 64 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

65.     Defendant denies the allegations contained in paragraph 65 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

66.     Defendant denies the allegations contained in paragraph 66 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

67.    Defendant denies the allegations contained in paragraph 67 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

68.    Defendant denies the allegations contained in paragraph 68 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

69.    The allegations set forth in paragraph 69 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 69 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

70.    Defendant denies the allegations contained in paragraph 70 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

71.    Defendant denies the allegations contained in paragraph 71 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

**Response to Count III**
**Negligent Misrepresentation**

72.    In response to paragraph 64 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

73.    Defendant denies the allegations contained in paragraph 73 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

74.    Defendant denies the allegations contained in paragraph 74 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

75.    Defendant denies the allegations contained in paragraph 75 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

76.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 76 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

77.    Defendant denies the allegations contained in paragraph 77 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

**Response to Count IV**
**Breach of Contract**

78.    In response to paragraph 78 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

79.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 79 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

80.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

81.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

82.    Defendant denies the allegations contained in paragraph 82 of the Complaint.

83.    The allegations set forth in paragraph 83 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant

denies the allegations contained in paragraph 83 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

84.     Defendant denies the allegations contained in paragraph 84 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

**Response to Count V**
**Breach of the Covenant of Good Faith and Fair Dealing**

85.     In response to paragraph 85 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

86.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 86 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

87.     The allegations set forth in paragraph 87 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 87 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

88.     Defendant denies the allegations contained in paragraph 88 of the Complaint.

89.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 89 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

90.     Defendant denies the allegations contained in paragraph 90 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

**Response to Count VI**
**Civil Conspiracy**

91.     In response to paragraph 91 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

92.     The allegations set forth in paragraph 92 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 92 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

93.     Defendant denies the allegations contained in paragraph 93 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

94.     Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 94 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

95.     The allegations set forth in paragraph 95 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 95 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

96.     Defendant denies the allegations contained in paragraph 96 of the Complaint.

**Response to Count VII**
**Accounting**

97.     In response to paragraph 97 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

98.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 98 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

99.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 99 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

**Response to Count VIII**
**Imposition of a Constructive Trust**

100.    In response to paragraph 100 of the Complaint, Defendant incorporates his answer to all proceeding paragraphs as if fully set forth herein.

101.    The allegations set forth in paragraph 101 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations contained in paragraph 101 of the Complaint to the extent the allegations are directed at Mr. Frontiere.

102.    Defendant denies the allegations contained in paragraph 102 of the Complaint.

103.    Defendant is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 103 of the Complaint and, therefore, denies the same to the extent the allegations are directed at Mr. Frontiere.

104.    In response to Plaintiffs' Prayer for Relief (the paragraph beginning with the word "WHEREFORE"), Defendant denies the allegations contained in this paragraph and all subparts, and specifically denies that Plaintiff is entitled to judgment, damages, special damages, punitive damages, costs, attorney fees, pre- or post-judgment interest, or any other form of relief against this Defendant.

105.    Defendant denies all other allegations of the Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

106.    Pursuant to Fed. R. Civ. P. 8(c), Mr. Frontiere asserts the following affirmative defenses:

### Affirmative Defense I
### Lack of Particularity

107.    Pursuant to Fed. R. Civ. P. 9(b), allegations of fraud must be pleaded with particularity.

108.    Plaintiff fails to identify with particularity statements and misrepresentations made by Mr. Frontiere to Mr. Peters.

109.    Plaintiff makes undifferentiated allegations against all Defendants without specifically identifying Mr. Frontiere.

110.    Lack of particularity both fails to satisfy the Rule 9(b) particularity pleading for fraud, as well as fails to provide Mr. Frontiere fair notice as to the grounds for the claims brought against him.

### Affirmative Defense II
### Fraudulent Inducement

111.    Mr. Frontiere is a victim of fraud perpetrated by Defendants Joseph Cellura and Michael Ghiselli. Mr. Frontiere was defrauded by Messrs. Cellura and Ghiselli, who induced Mr. Frontiere to invest $40,000 in TMIX.

112.    Messrs. Cellura and Ghiselli made material misrepresentations to Mr. Frontiere about the financial status and future plans of TMIX.

**Affirmative Defense III**
**No Control or Domination Over TMIX**

113.    Mr. Frontiere maintained no direct or indirect control or domination over TMIX.

114.    Mr. Frontiere had no control over TMIX's financial plans and systems, methods or operation, employee hiring practices, or any other business plans.

115.    Mr. Frontiere could not act unilaterally. Mr. Frontiere only relayed information provided directly from Mr. Cellura and Mr. Ghiselli.

**Affirmative Defense IV**
**Plaintiff Assumed the Risk**

116.    Mr. Peters touts "four decades of business experience" yet failed to do his due diligence and investigate TMIX.

117.    Mr. Peters had the duty to determine for himself whether TMIX was a sound investment.

118.    Mr. Peters failed to exercise his due diligence, despite acknowledging warning signs, and chose, of his own volition, to invest in TMIX regardless.

**Affirmative Defense V**
**Contributory Negligence**

119.    Mr. Peters' alleged damages were caused in whole or in part by Andersen's negligent acts and/or omissions, and not by any act or omission of Mr. Frontiere.

120.    Mr. Peters was acutely aware of the potential shortcomings associated with TMIX, Mr. Cellura, and Mr. Ghiselli.

121.    On August 26, 2019, Mr. Peters, via his assistant, sent Mr. Frontiere notes and questions regarding TMIX. The attached notes and slide deck indicate with question marks ("?") that Mr. Peters maintained questions and reservations about TMIX partners.

122.    Despite his concerns over TMIX, Mr. Peters employed his business judgment and decided to invest in TMIX nonetheless.

123.    Mr. Peters' decision to invest in TMIX despite his reservations and many decades in business demonstrates his contributory negligence.

### Affirmative Defense VI
### No Causation

124.    The damages allegedly suffered by Mr. Frontiere did not result from any act, omission or misconduct of Mr. Frontiere, but, if at all, resulted from the acts, omissions or misconduct of Mr. Peters, or others.

### Affirmative Defense VII
### Lack of Intent/Good Faith Effort to Recover

125.    Mr. Frontiere had no intent to defraud Mr. Peters.

126.    As described below, Mr. Frontiere made good faith efforts to discover what happened to investments made Mr. Peters and others in TMIX.

### Affirmative Defense VIII
### No Justifiable Reliance

127.    Mr. Peters did not justifiably rely on any of the alleged statements or omissions made by Mr. Frontiere set forth in Mr. Peters' Complaint.

### Affirmative Defense IX
### Failure to State a Claim

128.    Mr. Peters has failed to state a claim upon which relief can be granted.

### Affirmative Defense X
### Estoppel, Laches, or Waiver

129.    Mr. Peters' claims are barred by the doctrines of estoppel, laches, or waiver.

**Affirmative Defense XI**
**Unclean Hands**

130.    Mr. Peters' claims are barred by the doctrine of unclean hands.

**Affirmative Defense X**
**Failure to Mitigate Losses**

131.    Mr. Peters failed to mitigate any losses of which he now complains.

## DEFENSES RESERVED

Defendant hereby gives notice that it intends to rely upon any other defenses that may become available and apparent during the course of this litigation, and hereby reserves the right to amend its Answer and to assert such defenses.

## JURY DEMAND

Defendant hereby requests that this matter be tried to a jury of twelve (12) persons.

WHEREFORE, Mr. Frontiere prays for judgment in its favor and against Plaintiff, dismissing the Complaint with prejudice; and reimbursing Mr. Frontiere for his costs of this action; and for such other relief as may be appropriate. Furthermore, should Mr. Frontiere be held liable to Plaintiff, Mr. Frontiere requests relief in the form of full indemnity from Defendants TMIX, Joseph Cellura and Michael Ghiselli.

## CROSSCLAIMS AGAINST TMIX, JOSEPH CELLURA, and MICHAEL GHISELLI

132.    Pursuant to Fed. R. Civ. P. 13(g), Mr. Frontiere asserts the following crossclaims against Defendants TMIX, Joseph Cellura, and Michael Ghiselli ("Crossclaim Defendants"):

133.    If Defendant Joseph Frontiere is held liable to Plaintiff for sale of and failure to repay the Promissory Note, which is denied in all respects, the liability imposed upon Joseph

Frontiere would be solely the result of his status as employee of Defendants, TMIX, Joseph Cellura, and Michael Ghiselli.

134.    Moreover, if Defendant Joseph Frontiere is held liable to Plaintiff for any statutory or common law fraud or misrepresentation claims, which are denied in all respects, the liability imposed on Joseph Frontiere would be solely the result of fraud, misrepresentations and other wrongful conduct by the Crossclaim Defendants.

## PARTIES AND JURISDICTION

135.    Joseph Frontiere resides in the State of Florida.

136.    Upon information and belief, Tarsin Mobile, Inc. (TMIX) is a Florida Company with its principal place of business at 4041 East Sunset Road, Henderson, Nevada.

137.    Upon information and belief, Joseph Cellura is a resident of Nevada, and serves as an officer and agent of TMIX.

138.    Upon information and belief, Michael Ghiselli is a resident of California, and serves as an officer and agent of TMIX.

139.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Mr. Frontiere's first cause of action pursuant to 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 arises under federal law. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship amount the parties and the total amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because the claims are substantially related to those claims within the Court's original jurisdiction.

140.    The Court has personal jurisdiction over Crossclaim Defendants TMIX, Joseph Cellura, and Michael Ghiselli pursuant to those parties' consent to removal of Plaintiff's state court action to this Court.

141.    Venue is proper pursuant to 28 U.S.C. § 1441(a).

## ALLEGATIONS COMMON TO ALL CROSSCLAIMS

142.    Defendants TMIX, Joseph Cellura, and Michael Ghiselli will hereinafter be referred to jointly as "Crossclaim Defendants" unless otherwise differentiated.

**Joseph Frontiere's Introduction to Crossclaim Defendants**

143.    Mr. Frontiere met Mr. Joseph Cellura in June 2019.

144.    Upon information and belief, based on representations by Mr. Cellura as well as the TMIX OTC disclosure statement, Mr. Cellura is the Chairman and Chief Executive Officer of TMIX, who has claimed to have over 30 years of experience in finance and real estate development.

145.    Upon information and belief, based on representations by Mr. Ghiselli as well as the TMIX OTC disclosure statement, Mr. Ghiselli is the Chief Operating Officer of TMIX.

146.    At the time Mr. Frontiere met Mr. Cellura, Mr. Frontiere was seeking funds for his new technology company, Artificial Intelligence Venue Application (hereinafter "AIVA"). Mr. Cellura told Mr. Frontiere that TMIX would be able to help raise funds for AIVA. Mr. Cellura represented that TMIX already had $5 million in cash. Mr. Cellura further represented to Mr. Frontiere that a partnership between TMIX and AIVA would provide the funding Mr. Frontiere sought for AIVA.

147.    On June 14, 2019, Mr. Cellura sent Mr. Frontiere a slide deck regarding TMIX. The document conveyed (and Mr. Cellura confirmed) that TMIX owned various subsidiaries mentioned in the deck. The slide deck also represented, and Mr. Cellura confirmed, that TMIX was managed by a board of directors, identified in the slide deck.

148.    However, the slide deck was fabricated, and Mr. Cellura's representations were false. Many of the individuals claimed to be on the board of directors were not, in fact, on the board of directors. Moreover, TMIX did not own all of the companies/subsidiaries the slide deck and Mr. Cellura represented TMIX owned.

149.    On June 14, 2019, Mr. Cellura sent Mr. Frontiere an email, Subject: Lord Monumint Triller, with an attachment, which suggested that TMIX owned Triller, a Social Video Platform, as a subsidiary. This representation was false.  In a June 24, 2019, Mr. Cellura again sent an email to Mr. Frontiere suggesting that TMIX owned Triller: "Update: Triller has just exceeded 50 million total downloads."

150.    Mr. Cellura represented that in order for TMIX to fund AIVA, that Mr. Frontiere (and his brother, Nicholas) would need to invest in TMIX.

**Crossclaim Defendants' Promises to Joseph Frontiere Regarding AIVA**

151.    On June 24, 2019, Mr. Frontiere sent via email a series of clarifying questions regarding Mr. Frontiere's investment in TMIX and its relationship with AIVA. On July 3, 2019, Mr. Cellura responded to via email Mr. Frontiere's requests for clarification. Mr. Cellura stated, "We will immediately offer shares equivalent to the raise of $5 million USD [for AIVA]. We are currently underway in a capital raise and last acquisitions Aiva out raise amount pre-Aiva is $50 million we will allocate $5 million in IPO UOP."

152.    In the intervening period, on June 26, 2019. Mr. Ghiselli, upon Mr. Cellura's request, sent an email to Mr. Frontiere attaching a TMIX Convertible Note (hereinafter "Promissory Note") to Mr. Frontiere. The Promissory Note was for $40,000.

153.    A few days later, in an email dated July 1, 2019, Mr. Cellura represented to Mr. Frontiere that TMIX "will resume trading in the stock this summer." He further stated: "We have not been a reporting company due to the confidentiality of a lot of our development therefore when a public company does not report or trade there is a cautionary warning and stop sign placed on the stack to advise the company does not currently report to the public."

154.    The following week, on July 7, 2019, Mr. Ghiselli sent an email to Mr. Frontiere which included the wire instructions for TMIX. In this email, Mr. Ghiselli stated, "Tarsin Mobile's emphasis is on technology, and Episode 5 is the wholly owned subsidiary with a real estate focus."

155.    The very next day, on July 8, 2019, Mr. Cellura sent Mr. Frontiere an email representing that TMIX owned and operated Tarsin Sports Mobile Wagering. The slide deck included anecdotes of support for Tarsin and a list of sponsored lotteries and partners. And on July 9, 2019, Mr. Cellura emailed Mr. Frontiere an excel spreadsheet that included wildly inflated financial numbers for TMIX.

156.    On July 9, 2019, Mr. Frontiere wired TMIX the first $10,000 of the $40,000 investment. Mr. Cellura sent an email to Mr. Frontiere indicating no more investors were needed or would be sought for TMIX.

157.    On July 11, 2019, Mr. Cellura sent Mr. Frontiere another excel spreadsheet (190710 V5.7 Capitalization Schedule.xlsx) via email. These figures were fabricated and misrepresented the true state of TMIX, its subsidiaries, and its financial forecast.

158.    On July 12, 2019, based on all of the above misrepresentations by Messrs. Cellura and Ghiselli, Mr. Frontiere sent TMIX the remaining $30,000 of the $40,000 wire transfer for the Promissory Note.

**Crossclaim Defendants Friends and Family Scheme**

159.    On July 9, 2019, in an email to Mr. Frontiere, Mr. Cellura stated, "Tarsin vault is officially closed per our BOD meeting today, you guys were the law piece before we closed the vault." Based on this representation, Mr. Frontiere believed that no more investment money was needed for TMIX and that TMIX was flush with cash. Mr. Cellura told Mr. Frontiere that TMIX needed to "close the vault" so that TMIX could meet its July goal for going public; continuing to obtain investment funds past July would delay the IPO.

160.    Nevertheless, Messrs. Cellura and Ghiselli represented that opportunities were still available for close friends and family to invest in TMIX prior to the IPO that they claimed would soon happen.

161.    On July 11, 2019, Mr. Frontiere received a Non-Disclosure Agreement from Mr. Ghiselli. Mr. Frontiere was asked to sign the agreement, and subsequently would have access to additional TMIX information.

162.    On July 12, 2019, Mr. Cellura sent an email to Mr. Frontiere encouraging Mr. Frontiere find additional investors for TMIX. Mr. Cellura assured Mr. Frontiere "We have 10 years of due diligence on everything we [sic] have done and are doing."

163.    The rushed process of recruiting investors and their investments for TMIX happened within a few short weeks. Mr. Cellura emphasized that it was crucial to secure all investments by the end of July in order for TMIX to meet its audit date.

164.    On July 20, 2019, Mr. Frontiere forwarded Mr. Peters information regarding stock allocation and value, as well as the slide deck describing TMIX's endeavors. All information provided by Mr. Frontiere was based on representations made by Mr. Cellura to Mr. Frontiere.

165.    On July 24, 2019, Mr. Frontiere received an email from Mr. Lee Hanson that contained an excel spreadsheet showing the financial for Monumint and Lord Cultural. The figures were fabricated by Mr. Cellura.

**Crossclaim Defendants' Conduct Raises Questions**

166.    Mr. Frontiere began exploring the opportunity for employment with TMIX in late-June and early-July 2019. Mr. Cellura demanded Mr. Frontiere move to Los Angeles, California. He kept Mr. Frontiere on the road, traveling across the U.S. to attend meetings on behalf of TMIX.

167.    In September 2019, Mr. Cellura changed his mind and demanded Mr. Frontiere relocate to New York, New York and continue working on behalf of TMIX. Mr. Cellura reassured Mr. Frontiere that all moving and living expenses would be covered by TMIX. On September 26, 2019, Mr. Frontiere followed Mr. Cellura's wishes and moved to New York City.

168.    After Mr. Frontiere's relocation, in December 2019, Mr. Cellura informed Mr. Frontiere that Mr. Frontiere's living expenses, including rent, would not be covered by TMIX. Mr. Cellura told Mr. Frontiere that TMIX could not cover Mr. Frontiere's expenses because there were not enough funds. Mr. Cellura told Mr. Frontiere that Mr. Frontiere needed to raise additional funds to cover rent and living expenses.

169.    Mr. Frontiere was confused by Mr. Cellura's reasoning since Mr. Frontiere had just helped raise substantial funds for TMIX and AIVA. To Mr. Frontiere's knowledge, TMIX had $5

million from prior to Mr. Frontiere's arrival at the company, plus the $1.45 million that had been raised since Mr. Frontiere's employment.

**Joseph Frontiere Demands an Accounting.**

170.    In January 2020, suspicious of Mr. Cellura's behavior, Mr. Frontiere contacted Natasha Lyukevich, the accountant for TMIX and sought information regarding the financial standing of TMIX.

171.    Ms. Lyukevich did not have any definitive information and could not provide Mr. Frontiere any guidance as to where the TMIX funds had gone. Only Mr. Cellura and Mr. Ghiselli had access to the TMIX bank accounts, thus leaving Mr. Frontiere and Ms. Lyukevich in the dark.

172.    Based on information, both anecdotal and written, provided by Ms. Lyukevich, Mr. Frontiere determined that Mr. Cellura was embezzling money from TMIX. Over $100,000 was withdrawn and unaccounted for by Mr. Cellura.

173.    Mr. Frontiere did not receive an accounting and remained without living expenses promised to him. Instead, Mr. Cellura demanded Mr. Frontiere begin using his personal savings to provide Mr. Cellura interim cash.

174.    Shortly thereafter, on and around January 21, 2020, Mr. Frontiere informed other TMIX investors and partners of Mr. Cellura's potential misconduct.

175.    On January 21, 2020, Mr. Cellura attempted to cover up his misconduct in an email to Mr. Frontiere. Mr. Cellura stated, "I do not want the aggravation and after today we have no reason to go further in our endeavors . . . You and I are finished as the deception has caused significant problems for all involved, wasted a great deal of time and the cooping to harm me you

have been engaged in since before year end . . . At this time Mike [Ghiselli] and I want a peaceful resolve and everyone got their separate ways."

176.    On and around January 28, 2020, aware that Mr. Frontiere was cognizant of Mr. Cellura's fraudulent misconduct, Mr. Cellura attempted to slander Mr. Frontiere by sending letters to other investors, accusing Mr. Frontiere of taking investors' money and representing the investment funds as his own, with the intention of starting his own company. These representations were false and were detrimental to Mr. Frontiere's personal and professional reputations.

177.    In a January 30, 2020 email from Mr. Cellura to Mr. Frontiere, Mr. Cellura attempted to convince Mr. Frontiere no financial misconduct had occurred by submitting to Mr. Frontiere an account of the various TMIX investors and where the investment funds had been allocated.

178.    Mr. Cellura's fraudulent behavior is reaffirmed by email records between Ms. Lyukevich and Mssrs. Cellura and Ghiselli. Ms. Lyukevich requested an accounting of incoming and outgoing monies. In a text message thread between Mr. Cellura and Ms. Lyukevich, Mr. Cellura refused to provide a proper accounting, declaring "this is an internal accounting it doesn't make any difference what's personal and corporate."

179.    Such blatant disregard for sound business principles is indicative of the fraudulent misconduct conducted by Mssrs. Cellura and Ghiselli that characterized Mr. Frontiere's experience with TMIX.

180.    In February 2020, Mr. Ghiselli notified Mr. Frontiere via email that Mr. Ghiselli and Mr. Cellura had used Mr. Frontiere's social security number to complete a 1099 Form with the IRS. Mssrs. Ghiselli and Cellura did not have Mr. Frontiere's written or oral permission to use

his social security number for these means—they did not have Mr. Frontiere's permission to use his social security number whatsoever. The 1099 form illegally filed by Messrs. Cellura and Ghiselli falsely stated that Mr. Frontiere had received $1.45 million for personal income.

181.    Filing the 1099 form was used by Mssrs. Cellura and Ghiselli as a form of extortion—by suggesting that Mr. Frontiere had benefitted by excessive personal income, Mr. Frontiere had to answer to the IRS and his good-standing credit was jeopardized.

<u>**Count I**</u>
**FEDERAL SECURITIES FRAUD**

182.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

183.    Crossclaim Defendants are in violation of the Federal Exchange Act of 1934 § 10(b), which states, "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

184.    The Federal Exchange Act of 1943 has jurisdiction over the security sale at hand because Mr. Frontiere was a resident of New Mexico at the time of the transaction, and TMIX was a Florida Company with its principal place of business in Nevada.

185.    Crossclaim Defendants purposefully and directly employed a scheme to defraud Mr. Frontiere in connection with the offering for sale and sale of TMIX stock and Promissory Note

convertible into TMIX stock in, which defendants induced Mr. Frontiere's investment by misrepresenting that TMIX was a valuable company, by misrepresenting TMIX's holdings and plans for future acquisitions, by misrepresenting TMIX's earnings and business plans, and by misrepresenting that TMIX would soon undertake any initial public offering.

186.    Crossclaim Defendants also omitted material facts in their communications with Mr. Frontiere, including without limitation that (1) Crossclaim Defendants had no intention of taking TMIX public; (2) Crossclaim Defendants failed to disclose material financial information concerning the company, all to prevent Mr. Frontiere from learning the truth about TMIX and Crossclaim Defendants' intentions.

187.    Crossclaim Defendants purposely used this plan and scheme to deceive Mr. Frontiere into investing in TMIX.

188.    Crossclaim Defendants made untrue statements of fact and omitted material facts that under the circumstances were important, significant, and material to the investment decision of a reasonable person and were important, significant and material to Mr. Frontiere's decision to invest.

189.    Crossclaim Defendants' acts, practices, and conduct set forth herein would deceive or defraud and would have been misleading to a reasonable person and did deceive, defraud, and mislead Mr. Frontiere.

190.    Crossclaim Defendants' acts, practices, and conduct set forth herein would cheat or would operate as a fraud or deceit upon a reasonable person and did cheat and operate as a fraud or deceit upon Mr. Frontiere.

191.    Mr. Frontiere relied upon the representations made to him by Crossclaim Defendants to his detriment, and defendants caused injury to Mr. Frontiere.

192.    The misrepresentations and material omissions of defendants covered up their wrongdoing and proximately caused Mr. Frontiere not to discover that he had been defrauded until Crossclaim Defendants had made off with his money.

193.    Each Crossclaim Defendant is individually liable under 15 U.S.C.A. § 78t because each was an officer or employee of TMIX, each is a controlling person of TMIX and asserted direct or indirect control over its accounts and the ways in which investments in TMIX would be used; each Crossclaim Defendant individually materially aided one another in the conduct giving rise to liability; and each knew or in the exercise of reasonable care should have known of the wrongdoing perpetrated by all other Crossclaim Defendants in defrauding Mr. Frontiere.

194.    Crossclaim Defendants' actions were malicious, willful, reckless, wanton, oppressive, fraudulent or in bad faith, and thus entitling Mr. Frontiere to an award of punitive damages.

### Count II
### NEW MEXICO SECURITIES FRAUD

195.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

196.    Crossclaim Defendants are in violation of the New Mexico Uniform Securities Act § 58-13C-501, which states, "It is unlawful for a person, in connection with the offer, sale or purchase of a security, directly or indirectly: (A.) to employ a device, scheme or artifice to defraud; (B.) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances pursuant to which it is made,

not misleading; or (C.) to engage in an act, practice or course of business that operates or would operate as a fraud or deceit upon another person."

197.    The New Mexico Uniform Securities Act has jurisdiction over the security sale at hand because Mr. Frontiere was a resident of New Mexico at the time of the transaction.

198.    Crossclaim Defendants purposefully and directly employed a scheme to defraud Mr. Frontiere in connection with the offering for sale and sale of TMIX stock and Promissory Note convertible into TMIX stock in, which defendants induced Mr. Frontiere's investment by misrepresenting that TMIX was a valuable company, by misrepresenting TMIX's holdings and plans for future acquisitions, by misrepresenting TMIX's earnings and business plans, and by misrepresenting that TMIX would soon undertake any initial public offering..

199.    Crossclaim Defendants also omitted material facts in their communications with Mr. Frontiere, including without limitation that (1) Crossclaim Defendants had no intention of taking TMIX public; (2) Crossclaim Defendants failed to disclose material financial information concerning the company, all to prevent Mr. Frontiere from learning the truth about TMIX and Crossclaim Defendants' intentions.

200.    Crossclaim Defendants purposely used this plan and scheme to deceive Mr. Frontiere into investing in TMIX.

201.    Crossclaim Defendants made untrue statements of fact and omitted material facts that under the circumstances were important, significant, and material to the investment decision of a reasonable person and were important, significant and material to Mr. Frontiere's decision to invest.

202.    Crossclaim Defendants' acts, practices, and conduct set forth herein would deceive or defraud and would have been misleading to a reasonable person and did deceive, defraud, and mislead Mr. Frontiere.

203.    Crossclaim Defendants' acts, practices, and conduct set forth herein would cheat or would operate as a fraud or deceit upon a reasonable person and did cheat, and operate as a fraud or deceit upon Mr. Frontiere.

204.    Mr. Frontiere relied upon the representations made to him by Crossclaim Defendants to his detriment, and defendants caused injury to Mr. Frontiere.

205.    The misrepresentations and material omissions of Crossclaim Defendants covered up their wrongdoing and proximately caused Mr. Frontiere not to discover that he had been defrauded until Crossclaim Defendants had made off with his money.

206.    Each Crossclaim Defendant is individually liable under NMSA 1978, § 58-13C-509(G) because each was an officer or employee of TMIX, each is a controlling person of TMIX and asserted direct or indirect control over its accounts and the ways in which investments in TMIX would be used; each defendant individually materially aided one another in the conduct giving rise to liability; and each knew or in the exercise of reasonable care should have known of the wrongdoing perpetrated by all other defendants in defrauding Mr. Frontiere.

207.    Crossclaim Defendants' actions were malicious, willful, reckless, wanton, oppressive, fraudulent or in bad faith, and thus entitling Mr. Frontiere to an award of punitive damages.

**Count III**
**COMMON LAW FRAUD**

208.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

209.    Crossclaim Defendants purposefully and directly employed a scheme to defraud Mr. Frontiere in connection with promising investment in Mr. Frontiere's corporation AIVA, as well as the offering for sale and sale of TMIX stock and Promissory Note.

210.    Crossclaim Defendants knowingly and intentionally made material representations of fact to Mr. Frontiere to deceive Mr. Frontiere into investing $40,000 in TMIX, including by misrepresenting that TMIX was a valuable company, by misrepresenting that TMIX's holdings and plans for future acquisitions, by misrepresenting TMIX's earnings and business plans, by misrepresenting that TMIX would soon undertake an initial public offering, by misrepresenting that Mr. Frontiere would receive valuable TMIX stock in exchange for his $40,000 investment, and by misrepresenting that those shares would substantially increase in value following an imminent IPO.

211.    Such representations of fact include, but are not limited to, representing a management team and board of directors full of individuals who had no actual relation to Mssrs. Cellura and Ghiselli; indicating that TMIX owned multiple subsidiaries that, in fact, had no relation to TMIX; and that TMIX intended to purchase and partner with other corporations, while in fact lacking the plans and financial means to do so.

212.    Crossclaim Defendants' representations of fact were not true: they never intended to repay the Promissory Note and they never intended to take TMIX public.

213.    Crossclaim Defendants knew their representations to be false when they made them to Mr. Frontiere.

214.    Crossclaim Defendants intended to deceive Mr. Frontiere and induce him to act in reliance on their misrepresentations so they could secure a $40,000 loan from him and used him and his network to induce other investors.

215.    Crossclaim Defendants omitted material facts in their communications including without limitation that (1) Crossclaim Defendants had no intention of taking TMIX public; (2) Crossclaim Defendants did not acquire or intend to acquire Lord; (3) Crossclaim defendants failed to disclose material financial info1mation concerning the company, all to prevent Mr. Frontiere from learning the truth about TMIX and Crossclaim defendants' intentions.

216.    Crossclaim Defendants' fraudulent behavior is further made obvious by Mr. Cellura's refusal to undergo a proper accounting, as requested by Mr. Frontiere and expressed as legally necessary by Ms. Lyukevich.

217.    Crossclaim Defendants' refusal to provide bank account and transaction transparency also suggests that their actions are not and have not been a legitimate use of the corporate form.

218.    Mr. Frontiere relied to his detriment on defendants' fraudulent misrepresentations and omissions and paid TMIX $40,000, as well as served as a pawn in Crossclaim Defendants' fraudulent scheme.

219.    Crossclaim Defendants fraudulently filed a Form 1099 with the Internal Revenue Service.

220.    Mr. Ghiselli sought to create conflict between the IRS and Mr. Frontiere as a means of scaring Mr. Frontiere away from discovering and publicizing Mssrs. Cellura and Ghiselli's fraudulent behavior.

221.    Crossclaim Defendants acts have gravely injured Mr. Frontiere financially, personally, and professionally.

222.    Crossclaim Defendants' actions were malicious, willful, reckless, wanton, oppressive, fraudulent or in bad faith, and thus entitling Mr. Frontiere to an award of punitive damages.

## Count IV
## NEGLIGENT MISREPRESENTATION

223.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

224.    Crossclaim Defendants made material misrepresentations of fact to Mr. Frontiere in connection with the offer and purchase of TMIX stock, and the agreement that TMIX would contribute to AIVA.

225.    Crossclaim Defendants intended for Mr. Frontiere to rely on these material misrepresentations, and Mr. Frontiere did in fact rely on them.

226.    Crossclaim Defendants had no reasonable ground for believing that the misrepresentations they made were true. Crossclaim Defendants knew that the representations made in the circulated slide decks were fraudulent, an impressive yet illegitimate use of artistic abilities.

227.    Mr. Frontiere was damaged financially, personally, and professionally as a result of these misrepresentations.

228.    Crossclaim Defendants' actions were malicious, willful, reckless, wanton, oppressive, fraudulent or in bad faith, and thus entitling Mr. Frontiere to an award of punitive damages.

### Count V
### BREACH OF PROMISSORY NOTE CONTRACT

229.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

230.    TMIX had a valid, binding contract with Mr. Frontiere whereby TMIX agreed to repay Mr. Frontiere $40,000 plus interest one year from execution of the Promissory Note.

231.    Defendants Joseph Cellura and Michael Ghiselli, in the capacities as Chief Executive Officer/Chairman and Chief Operating Officer, respectively, are bound by the Promissory Note contract.

232.    Defendants, Joseph Cellura and Michael Ghiselli, held themselves out as agents and executives of TMIX.

233.    Defendants, Joseph Cellura and Michael Ghiselli, maintained direct control and domination over TMIX.

234.    Defendants, Joseph Cellura and Michael Ghiselli, had absolute control over TMIX's business practices, financial investments, and bank accounts.

235.    All material correspondence was either sent by defendants, Joseph Cellura and Michael Ghiselli, or included both defendants in the communication via 'cc'.

236.    TMIX never repaid the Promissory Note, despite the maturation of the Note in July 2020 and Mr. Frontiere's demands for repayment. TMIX is in breach of the contract.

237.    All conditions precedent to enforcement of the Promissory Note have been satisfied or waived.

238.    Defendants, Joseph Cellura and Michael Ghiselli, individually and as corporate officers of TMIX used TMIX to perpetuate a fraud against Mr. Frontiere to deny Mr. Frontiere the benefit of his contract with TMIX.

239.    Mr. Frontiere was injured by Crossclaim Defendants' breach of contract, and the injury was proximately caused by each Joseph Cellura and Michael Ghiselli's abuse of the corporate form, rendering each of them jointly and severally liable to Mr. Frontiere for the breach.

240.    The actions of Defendants Joseph Cellura and Michael Ghiselli were malicious, willful, reckless, wanton, oppressive, fraudulent or in bad faith, and thus entitling Mr. Frontiere to an award of punitive damages.

## Count VI
### TORTIOUS INTERFERENCE OF THE PROMISSORY NOTE CONTRACT

241.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

242.    Crossclaim Defendants had knowledge of the existence of the Promissory Note contract.

243.    The Promissory Note contract was breached. Mr. Frontiere never received a return of payment for $40,000.

244.    Crossclaim Defendants played an active and substantial part in losing the benefits of the contract. The contract was not fulfilled as a result of defendants' fraudulent misconduct.

245.    Crossclaim Defendants maintained direct control over TMIX, its financial plans, and the fulfillment of the Promissory Note terms.

246.    Mr. Frontiere was damaged by TMIX's failure to fulfill the Promissory Note contract terms and return his $40,000 investment.

247.    Crossclaim Defendants induced Mr. Frontiere to agree to the contract and induced the breach without justification.

248.    Crossclaim Defendants engaged in tortious interference based on fraudulent motives for personal gain and embezzlement.

249.    But for Crossclaim Defendants' tortious interference and wrongful conduct, the contract would have otherwise been performed.

<u>**Count VII**</u>
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING FOR PROMISSORY NOTE CONTRACT**

250.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

251.    An implied covenant of good faith and fair dealing is inherent in the Promissory Note between the parties.

252.    Crossclaim Defendants Cellura and Ghiselli breached their implied covenant of good faith and faith dealing by, among other things, withholding the benefit of the agreement by never intending to and failing to repay the principal and interest due on the Promissory Note when the term of the Promissory Note matured.

253.    Crossclaim Defendants Cellura and Ghiselli have acted in bad faith in withholding the benefit of the Promissory Note from Mr. Frontiere, as well as by consistently and intentionally offering material misrepresentations as to the financial success and prospects of TMIX.

254.    The conduct of Crossclaim Defendants Cellura and Ghiselli has caused Mr. Frontiere harm.

255.    Defendants', Joseph Cellura and Michael Ghiselli, actions were malicious, willful, reckless, wanton, oppressive, fraudulent or in bad faith, and thus entitling Mr. Frontiere to an award of punitive damages.

<u>**Count VIII**</u>
**CIVIL CONSPIRACY**

256.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

257.    A conspiracy existed among Crossclaim Defendants to defraud Mr. Frontiere out of $40,000 using a false narrative about an investment opportunity in TMIX and subsequent false representations to obscure their intentions to use Mr. Frontiere's money for their personal purposes.

258.    A conspiracy existed among Crossclaim Defendants to defraud Mr. Frontiere by using Mr. Frontiere's company AIVA as leverage to convince Mr. Frontiere to invest in and represent TMIX to other investors. Using a false narrative about an investment opportunity in TMIX and subsequent false representations, defendants obscured their intentions to use Mr. Frontiere's money and network for their personal purposes.

259.    Both Joseph Cellura and Michael Ghiselli took specific and wrongful actions against Mr. Frontiere to further the objective of defrauding Mr. Frontiere. Such actions include, without limitation, (1) defrauding out of $40,000, (2) presenting material misrepresentations through financial statements, slide decks, in-person communications, and electronic

communications, untrue and misleading information regarding the state of TMIX, and (3) using these false representations and the promise to provide funds for AIVA.

260.    Crossclaim Defendants Cellura and Ghiselli, by attempting to conceal, confuse, and obscure their activities have engaged in an agreement to conspire to use unlawful means to defraud innocent investors and use the investment funds for personal use.

261.    As a proximate result of these wrongful actions undertaken and carried out by Crossclaim Defendants pursuant to this conspiracy, Mr. Frontiere has been injured by an amount to be proved at trial.

## Count IX
## DEFAMATION

262.    Defendant hereby re-alleges and incorporates by this reference the proceeding paragraphs as if fully set forth herein.

263.    Crossclaim Defendant Joseph Cellura circulated a letter to TMIX investors on or around January 21, 2019, accusing Mr. Frontiere of (1) taking investors' money, (2) claiming the money as his own, and (3) using the money to invest in his own corporation.

264.    The allegations set forth in Defendant Joseph Cellura's letter were false.

265.    The defamatory allegations have caused injury to Mr. Frontiere. The fallout from the false allegations has been detrimental to Mr. Frontiere's personal and professional reputation.

266.    Mr. Frontiere is at the beginning of his business career. Such accusatory and false allegations are a detrimental setback to his professional career and will have substantial consequences moving forward.

## PRAYER FOR RELIEF

WHEREFORE Mr. Frontiere prays for judgment against defendants as follows:

A. Judgment against Crossclaim Defendants on all claims;

B. All compensatory damages suffered by Mr. Frontiere;

C. Disgorgement of profits received by Crossclaim Defendants because of Crossclaim Defendants' fraud;

D. All exemplary and punitive damages in an amount commensurate with Crossclaim Defendants' ability to pay and to deter future misconduct;

E. An accounting of all Crossclaim Defendants' income and expenses, including as related to Mr. Frontiere's $40,000 investment in TMIX;

F. For the imposition of a constructive trust in favor of Mr. Frontiere's on all property obtained by Crossclaim Defendants by misappropriation of Mr. Frontiere's money;

G. Mr. Frontiere's reasonable attorneys' fees, expenses, and costs in this action, pursuant to Mr. Frontiere's Promissory Note contract; and

H. For such further relief as the Court may deem just, proper and equitable under the circumstances.

Respectfully Submitted,

HINKLE SHANOR LLP

*/s/ Michael E. Jacobs*
Michael E. Jacobs
Julie A. Sakura
P.O. Box 2068
Santa Fe, NM 87504
505.982.4554
mjacobs@hinklelawfirm.com
jsakura@hinklelawfirm.com

*Attorneys for Defendants Joseph &
Nicholas Frontiere*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of June 2021, I filed the forgoing electronically, which caused all parties or counsel of records to be served by electronic means, as more fully reflected on the Notice of Electric Filing.

*/s/ Michael E. Jacobs*
Michael E. Jacobs