# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GERALD PETERS,

       Plaintiff,

vs.                                                                                                                                                                            No. 1:21-cv-00564 WJ/JHR

JOSEPH FRONTIERE, NICHOLAS FRONTIERE,
MICHAEL GHISELLI, ALEXANDRA AIZENSHTADT,
JOSEPH CELLURA, and TARSIN MOBILE, INC.

       Defendant,

vs.

JOSEPH FRONTIERE,

       Cross-claimant,

vs.

MICHAEL GHISELLI, JOSEPH CELLURA,
and TARSIN MOBILE, INC.,

       Cross-claim Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS/CROSSCLAIM DEFENDANTS MICHAEL GHISELLI AND JOSEPH CELLURA'S MOTION TO STAY PENDING LITIGATION (DOC. 16)**

THIS MATTER comes before the Court upon the following:

- Defendants/Crossclaim Defendants Michael Ghiselli and Joseph Cellura's Motion to Stay Pending Litigation (Doc. 16, 8/5/2021),
- Plaintiff's Response in Opposition to Motion to Stay (Doc. 28, 9/2/2021),
- Opposition by Defendants/Crossclaimants Joseph Frontiere and Nicholas Frontiere to Motion to Stay (Doc. 29, 9/2/2021), and

1

- Defendants/Crossclaim Defendants Michael Ghiselli and Joseph Cellura's Reply in Support of Motion to Stay Litigation (Doc. 33, 9/30/2021).

In relevant part, Defendants Michael Ghiselli and Joseph Cellura request the Court to stay this federal lawsuit under the *Colorado River* doctrine[1] until similar litigation in Nevada state court[2] has been resolved. Conversely, Plaintiff Gerald Peters and Defendants Joseph and Nicholas Frontiere argue that the Court should not stay this federal lawsuit. Having considered the pleadings, the parties' arguments and the applicable law, the Court finds that the Motion to Stay is not well-taken and is, therefore, **DENIED**.

## BACKGROUND

This case is about an investment gone wrong. Years ago, Plaintiff Gerald Peters ("Plaintiff") invested $750,000 in a company named Tarsin Mobile before it was supposed to go public. Doc. 9 at 19. In convincing Plaintiff to make this investment, the collective Defendants allegedly made knowingly false representations, and thereafter "absconded" with his investment. *Id.* To recover damages, Plaintiff now asserts ten causes of action: Federal Securities Fraud in violation of the Federal Exchange Act of 1934 § 10(b), New Mexico Securities Fraud, Common Law Fraud, Negligent Misrepresentation, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Civil Conspiracy, Accounting, Imposition of a Constructive Trust, and Promissory Estoppel. *See generally id.* The Court has yet to make any substantive rulings in this lawsuit.

Meanwhile, in the Eighth Judicial District Court of Nevada, a separate yet related matter (the "Nevada lawsuit") was filed about seven months before this suit and is set for trial in just a few months. According to Defendants Ghiselli and Cellura, the dispute in the Nevada lawsuit

---

[1] *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18 (1976).
[2] *See* Doc. 17-1.

involves an investment dispute between Joseph Frontiere, Joseph Cellura (President and CEO of TMIX), and Michael Ghiselli (COO of TMIX). Doc. 16 at 2. With over thirty named parties, the Nevada lawsuit involves broad issues, such as "ownership of various entities, whether investment dollars were directed properly and who actually has control of Tarsin Mobile . . . the money invested in Tarsin Mobile, and the ownership of Convertible Notes." *Id.* at 6. Because of the more comprehensive litigation of the Nevada lawsuit and its potential impact on the instant case, Defendants Ghiselli and Cellura argue this Court should stay this case pending resolution of the Nevada lawsuit. The Court now addresses whether these circumstances warrant such a remedy.

## DISCUSSION

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18 (1976). In rare circumstances, however, a district court may stay its proceedings in "situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts." *Id*. at 817. The underlying principles of such analysis are "wise judicial administration," "conservation of judicial resources and comprehensive disposition of litigation." *Id.* (citing *Kereotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).

In determining whether a stay is appropriate, the Court must engage in a three-step process. First, it must decide whether to apply the *Colorado River* factors (dealing with coercive relief) or the *Brillhart* factors (dealing with declaratory judgements). *United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002). Second, given the Court's ultimate determination that the *Colorado River* factors apply as discussed below, the Court must then determine whether the federal and Nevada lawsuits are "parallel" by evaluating whether "substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l*

3

*Union, United Mine Workers of America*, 946 F.2d 1072, 1073 (4th Cir. 1991). Third, if the state and federal proceedings are parallel, the Court must balance the *Colorado River* factors to "ascertain whether there exist '*exceptional*' circumstances, the 'clearest of justifications,' that . . . justify the surrender of jurisdiction." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983) (emphasis added).

    **I.**    ***Colorado River* governs the Court's evaluation of Defendants Ghiselli and Cellura's motion to stay the proceedings.**

As an initial matter, the Court must first determine the appropriate legal standard to apply. Defendants Ghiselli and Cellura cite both to *Colorado River* and *Schering Corp. v. Griffo*—a case in which the presiding judge stayed a declaratory judgement action pending resolution of a parallel state proceeding pursuant to the *Brillhart* factors. 872 F. Supp. 2d 1220, 1221 (D.N.M. 2012) (Browning, J.). In response, Plaintiff argues that the *Brillhart* five-factor test applies only to declaratory judgement actions, and since Plaintiff does not seek a declaration of rights, *Colorado River* applies. Thus, the Court must determine whether *Colorado River* or *Brillhart* governs the evaluation of Defendants' motion to stay these proceedings.

The Tenth Circuit has explained that "the nature of the relief requested by the plaintiff, not the jurisdictional basis of the suit, is the touchstone" of whether to apply *Colorado River* or *Brillhart*. *Las Cruces*, 289 F.3d at 1181. "If the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgement action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit." *Id.* at 1180–1181 ("We do not reach the propriety of a stay pursuant to the more exacting standard of *Colorado River*."). *See generally Nautilus Ins. Co. v. Otero County Hosp. Ass'n*, Civ. No. 2:11-00178, 2011 U.S. Dist. LEXIS 158567, at *7–*14 (D.N.M. Nov. 4, 2011).

Here, Plaintiff alleges that the collective Defendants fraudulently induced Plaintiff to invest $750,000 in Tarsin Mobile, and thereafter absconded with his investment. Doc. 9 at 19. As a result, Plaintiff asserts ten causes of actions seeking recovery for damages—not a declaration of his rights. Therefore, recognizing the coercive nature of this federal suit, the Court will not apply *Brillhart*'s discretionary standard and instead, finds that *Colorado River* supplies the proper legal standard for adjudicating Defendants' motion to stay.

## II.     The federal and state actions are not parallel.

This federal lawsuit and the Nevada lawsuit are not parallel for purposes of the *Colorado River* doctrine. Therefore, there is no basis for the Court to stay these proceedings in favor of the Nevada lawsuit.

To grant a stay under *Colorado River*, the Court must first determine whether the state and federal proceedings are sufficiently "parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). Suits are parallel for *Colorado River* purposes "if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp.*, 946 F.2d at 1073. The "exact identity of parties and issues is not required." *Las Cruces*, 289 F.3d at 1182. To determine whether state proceedings are parallel to federal proceedings, the Tenth Circuit has held that "the better approach is to examine the state proceedings *as they actually exist* . . . ." *Fox*, 16 F.3d at 1994 (emphasis added). Furthermore, the Supreme Court has commented that to grant a stay under *Colorado River* would be "a serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties . . . [T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

Any doubt regarding the parallel nature of the state suit should be resolved in favor of exercising jurisdiction. *Id.*

Turning to the question whether the Nevada lawsuit is parallel to this federal lawsuit, the Court finds that neither the parties nor the issues in both proceedings are substantially similar for the following reasons.  First, the instant federal lawsuit and the Nevada lawsuit do not involve "substantially the same parties." The sole plaintiff in this case, Gerald Peters, appears in the Nevada lawsuit merely as a "nominal third-party defendant" in four sparsely plead counterclaim allegations by another third-party defendant.[3] Plaintiff has yet to be served, nor has he taken any affirmative steps to participate in the Nevada lawsuit. He is one of thirty plus parties named in the suit—the overwhelming majority of whom have no stake in this federal proceeding. These facts are strikingly similar to the facts in *Sheerbonnet, Ltd. v. American Exp. Bank Ltd.*, where the Second Circuit held that two proceedings involved substantially different parties because many creditors who participated in the state action did not participate in the federal action. 17 F.3d 46, 50 (2d Cir. 1994). While the majority of parties in this suit appear as named parties in the Nevada lawsuit, most parties involved there[4] are not named in this federal proceeding. Additionally, although referenced several times in the counterclaims, Nicholas Frontiere—against whom Plaintiff asserts many claims—is not listed as a party defendant in the Nevada lawsuit. In short, Plaintiff's status as a *nominal* third-party defendant, the absence of Mr. Frontiere as a named party, and the large number of unrelated parties at the heart of the Nevada lawsuit all establish that the parties in the two lawsuits are not substantially similar.

---

[3] Plaintiff does not appear as a "real party in interest" who "has the legal right to bring the suit." *FDIC v. Geldermann, Inc.*, 975 F.2d 695, 698 (10th Cir. 1992); *see also Hunt v. Waters*, 403 F. Supp. 3d 1036, 1067 (D.N.M. 2019) ("The Tenth Circuit recognizes as nominal parties those parties with no real interest in a suit or against whom no relief is sought . . . .").
[4] This includes 24 third-party defendants and nominal third-party defendants.

Second, both proceedings do not involve "substantially the same *issues*." In the Nevada lawsuit, the issues being litigated are much more extensive and far-reaching than the issues being litigated in the instant case. For example, the Nevada lawsuit involves issues relating to the ownership of various entities, whether investment dollars were directed properly, which parties had control of Tarsin Mobile, creditors' rights, and the nature of convertible notes. Doc. 16 at 6–7. Conversely, the scope of litigation in this lawsuit is more narrow in that Plaintiff's claims all involve allegations that the collective Defendants fraudulently induced Plaintiff to invest $750,000 in Tarsin. In other words, the Nevada litigation involves a variety of seemingly high-level corporate disputes regarding numerous third parties, whereas this dispute in the federal lawsuit is more particularized between one investor and the various entities that comprise the company. In fact, not a single one of Plaintiff's claims appears in the Nevada lawsuit.

Defendants argue that the Nevada court's determination of several issues, such as creditor's rights and who would be required to pay Plaintiff's recovery, would directly impact this litigation. Doc. 33 at 6. The Nevada court may decide issues that very well impact Plaintiff's rights, but that alone is insufficient to establish the *substantial* similarity between the cumulative issues in both proceedings. Furthermore, Defendants have yet to establish that any determination in the Nevada proceeding would have a dispositive effect on Plaintiff's ten claims in this federal lawsuit, and this is especially true for Plaintiff's federal Securities Act claim. *See Levy v. Lewis*, 635 F.2d 960, 967 (2d Cir. 1980); *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013). For these reasons, the Nevada lawsuit would not provide an "adequate vehicle for the complete and prompt resolution" of Plaintiff's claims. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

Therefore, the Court finds that Defendants Ghiselli and Cellura have failed to meet their burden to establish that both lawsuits are parallel, which alone warrants denial of their motion to stay these proceedings.

**III.     The *Colorado River* factors weigh against granting the motion to stay this lawsuit.**

Even if the Court found that both lawsuits were parallel, the *Colorado River* factors do not warrant "exceptional circumstances" to stay this federal proceeding.

The Court must engage in a "careful balancing of the important [*Colorado River*] factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses Cone*, 460 U.S. at 819. The *Colorado River* factors include: (1) "whether either court has assumed jurisdiction over property," (2) "the inconvenience of the federal forum," (3) "the desirability of avoiding piecemeal litigation," (4) "the order in which the courts obtained jurisdiction," (5) "the vexatious or reactive nature of either the federal or the state action," (6) "whether federal law provides the rule of decision," and (7) "the adequacy of the state court action to protect the federal plaintiff's rights." *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994).

No single factor is dispositive, as "[t]he weight to be given to any one factor may vary greatly from cases to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16. In balancing the factors, the essential inquiry is "whether there exist '*exceptional*' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of jurisdiction." *Id.* at 25–26 (emphasis added). Any doubt should be resolved in favor of exercising federal jurisdiction. *Fox*, 16 F.3d at 1079; *Moses Cone*, 460 U.S. at 28 ("If there is any substantial doubt" as to whether "complete and prompt" protection of the federal rights is available in the state proceeding, dismissal "would be a serious abuse of discretion").

Defendants Ghiselli and Cellura argue that the Nevada lawsuit—with trial set in a few months—is substantially more advanced, has been pending for one year, and has undergone significant discovery, while this Court has yet to hold an initial pretrial conference. Doc. 16 at 7. Despite Plaintiff not having asserted a single claim in the Nevada lawsuit, Defendants Ghiselli and Cellura argue "each of the parties in this case will be forced to litigate virtually identical claims in both the Nevada state court and in this proceeding." Doc. 33 at 3. Pointing to the doctrine of comity, they argue it would be a waste of judicial resources, duplicative, and disrespectful to the Nevada state court to decline Defendants' stay request. Doc. 16 at 7. Having considered the *Colorado River* factors—addressed in turn below—the Court finds that the facts here do not warrant *exceptional* circumstances to overcome this Court's "virtually unflagging obligation . . . to exercise [its] jurisdiction." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18 (1976).

The first factor ("whether either court has assumed jurisdiction over property") is irrelevant here because no claims in this litigation affect property. With regards to the second factor ("convenience of the forum"), staying this proceeding and forcing Plaintiff to litigate in Nevada state court—which, at this point, may not be possible—would be highly inconvenient for Plaintiff; Defendants do not contest that Plaintiff does not have contacts with that state. He has not engaged in any relevant activity in Nevada, while Defendants traveled to New Mexico to allegedly induce Plaintiff to wire $750,000 to Tarsin Mobile. Also, Defendants do not currently reside in the forum, and a number of testifying witnesses would have to travel from out of state. Doc. 33 at 8. However, this factor weighs against staying this matter because the relevant transactions leading to this lawsuit took place in New Mexico.

Third ("the desirability of avoiding piecemeal litigation"), the Court disagrees with Defendants Ghiselli and Cellura's assertion that this suit's continuation would result in piecemeal litigation. The claims asserted here do not exist in the Nevada lawsuit, and it is not clear whether any of the issues to be resolved in the Nevada lawsuit would have a dispositive effect on Plaintiff's claims. Moreover, there would be little chance of the Nevada lawsuit having any effect on Plaintiff's Securities Act claim, over which federal courts have exclusive jurisdiction. Even if the resolution of certain factual disputes touches on the matter pending before the Court, "the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River*, 424 U.S. at 816.

The fourth factor ("the order in which the courts obtained jurisdiction") weighs in favor of staying this lawsuit because the Nevada lawsuit was filed nearly seven months before the instant case and has undergone significant discovery. The Court agrees with Defendants Ghiselli and Cellura that revisiting issues already litigated in the Nevada lawsuit has the potential to violate the *Colorado River* principles of "wise judicial administration," "conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817–18 (1976) (citing *Kereotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). However, the other factors that caution against granting the Motion to Stay clearly outweigh this fourth factor.

As for the fifth factor ("the vexatious or reactive nature of either the federal or the state action"), Defendants Ghiselli and Cellura do not assert any claims of forum shopping or other suspicious circumstances surrounding this litigation. Instead, one would reasonably expect Plaintiff—a New Mexico native, allegedly wronged by the collective Defendants' alleged misconduct *in New Mexico*—to file suit in the District of New Mexico. These facts are unlike those

in *Potter/Ortiz, LLC v. Lone Mountain Ranch* in which the plaintiff filed suit for identical claims with the same facts in both state and federal court on the same day with the same lawyers, suggesting vexatious or retributive motivations. No. Civ. 13-1043, 2014 U.S. Dist. LEXIS 187100, *3 (D.N.M. July 29, 2014). Moreover, this federal lawsuit does not involve a situation where a party "came to the federal courts for relief only after receiving an unfavorable state-court ruling on arbitrability several years after litigation had begun in … [the] state court system." *D.A. Osguthorpe Family Partnership v. ASC Utah, Inc.*, 705 F.3d 1233, 1235 (10th Cir. 2013). To the Court's knowledge, this federal suit is Plaintiff's first bite at the apple—a fact that weighs clearly in favor of Plaintiff.

With regards to number six ("whether federal law provides the rule of decision"), Defendants Ghiselli and Cellura argue:

> [T]he legal status of Tarsin Mobile will likely be determined under Florida law; whether Tarsin Mobile or 27 Health Holdings Corp. now holds the shares purchased with the investment funds may be determined under Florida or California or Nevada law; and whether Defendant Cellura or Defendant Ghiselli own any of those shares will likely be determined under Nevada law . . . [which] will require interpretation of state law from states other than where this Court is located.

Doc. 33. at 9. While the Court may examine relevant law from these forums, many of Plaintiff's claims will be governed by New Mexico law and common law. As mentioned above, federal law will undoubtedly provide the exclusive rule of decision for Plaintiff's Securities Act claim. Therefore, this factor weighs against staying this proceeding.

The seventh and last factor ("the adequacy of the state court action to protect the federal plaintiff's rights") weighs against staying the instant suit. Even though trial in the Nevada lawsuit is just a few months away, Defendants have yet to serve Plaintiff—again, named as a *nominal* third party—and Plaintiff has not asserted a single claim in such litigation. Given that Plaintiff cannot

achieve recovery through the Nevada lawsuit, the Court finds that the Nevada lawsuit would inadequately protect Plaintiff's rights, weighing strongly against Defendants' motion to stay.

In sum, the following factors weigh against granting Defendants Ghiselli and Cellura's motion to stay: all relevant transactions leading to this federal lawsuit occurred in New Mexico, there is a minor possibility of piecemeal litigation, the record does not reflect that Plaintiff had vexatious or reactive motivations in filing this lawsuit, federal law will govern Plaintiff's Securities Act claim, and—most importantly—the Nevada lawsuit would be entirely inadequate to protect Plaintiff's rights. Accordingly, the Court finds that the foregoing considerations do not rise to the level of exceptional circumstances to warrant a stay under the *Colorado River* doctrine.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Stay these proceedings (Doc. 16) is hereby **DENIED** for reasons discussed in this Memorandum Opinion and Order.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE