# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

GERALD PETERS,

      Plaintiff,

v.                                                                                                No. 1:21-cv-00564-WJ-JMR

JOSEPH FRONTIERE, NICHOLAS
FRONTIERE, MICHAEL GHISELLI,
JOSEPH CELLURA, and TARSIN
MOBILE, INC.,

      Defendants.

JOSEPH FRONTIERE and NICHOLAS FRONTIERE,

      Cross-Claimants,

v.

MICHAEL GHISELLI, JOSEPH CELLURA,
and TARSIN MOBILE, INC.,

      Crossclaim Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 184)

**THIS MATTER** is before the Court on Plaintiff Gerald Peters's ("Peters's") Motion for Partial Summary Judgment Finding the Tarsin Defendants Jointly and Severally Liable for any Finding of Federal or New Mexico Securities Fraud Liability Against Joseph and Nicholas Frontiere at Trial (**Doc. 184**). Plaintiff seeks a ruling on derivative, or control person, liability against the Tarsin Defendants for the actions of Joseph and Nicholas Frontiere under 15 U.S.C. § 78(t) (§ 20(a)) of the Federal Act and § 58-13C-509(G) of New Mexico's Act. Having considered the parties' briefing and the applicable law, the Court concludes Peters is entitled to summary judgment. The Motion (**Doc. 184**) is therefore **GRANTED**.

1

## UNDISPUTED FACTS[1]

In September 2018, Tarsin Mobile Inc. ("Tarsin") had three employees: Joseph Cellura, (Chairman and Chief Executive Officer), Michael Ghiselli (Chief Operating Officer, Vice Chairman of the Board, and Treasurer/Secretary), and Lee Hanson[2] (President and Director). **Doc. 184-1 at 7–8**. Joseph and Nicholas Frontiere became involved with Tarsin in 2019. In mid-June 2019, Joseph Frontiere met with Mr. Cellura and Mr. Hanson in Santa Fe, New Mexico. **Doc. 184-2**. Joseph's brother, Nicholas Frontiere, also attended the meeting by phone. **Doc. 184-3 at 35:03–13**. On July 8, 2019, Joseph and Nicholas Frontiere emailed "Bios" to Mr. Cellura, which he edited and emailed back for their approval. **Doc. 184-4**. The next day, Mr. Cellura sent a text message to Joseph Frontiere referencing Joseph's idea that Gerald Peters could be a possible investor. **Doc. 184-5** ("I thought about the Gerald Peters and Lord opportunity you mentioned yesterday sounds like a good fit.").

On July 15, 2019, Joseph Frontiere requested and attended a lunch with Peters in Santa Fe, where they discussed the opportunity for Peters to invest in Tarsin. **Docs. 184-6, 200-2 at 3.** Two days after this lunch, Mr. Cellura sent Joseph Frontiere an "Executive Employment Agreement," giving Joseph the title of Tarsin's "Director of Corporate Finance." **Docs. 184-7, 184-8.** According to the employment agreement, Joseph Frontiere would report to Tarsin's CEO, Mr. Cellura. **Doc. 184-8.** Joseph Frontiere executed and returned this agreement. **Docs. 184-11, 184-12.**

In his role as Director of Corporate Finance, Joseph Frontiere engaged in raising money from family and friends. **Docs. 184-3 at 103:06–23, 184-13 at 108:22–109:25.** In this role, Joseph had the authority to pursue investments from whoever he wished and did not need to get permission

---

[1] The following facts are undisputed for the purposes of this motion.

[2] Mr. Hanson is not a named defendant in this case. **Doc. 9.**

from other Tarsin Executives before pursing an investor. **Doc. 184-3 at 103:06–23.** Mr. Cellura also testified that Tarsin left it up to Joseph and Nicholas Frontiere to decide Nicholas's involvement in Tarsin. *Id.* **at 94:03–13.** In Tarsin's investor pitch deck, both Nicholas and Joseph were listed as part of Tarsin's "Management Team," and Nicholas was listed as Tarsin's "Technology Advisor." **Doc. 184-22 at 24.**

On July 17, 2019, Tarsin COO Mr. Ghiselli emailed Joseph Frontiere a promissory note with Mr. Peters listed as a lender of $750,000. **Docs. 184-9, 184-10.** Joseph then forwarded it to Nicholas. Mr. Cellura testified that his approval was required to issue a note but that "given the family relationship that was described to me, and the closeness of Gerald [Peters] and Joey's late father, [Mr. Cellura] pretty much made an exception to leave the Gerald Peters note in – totally in the hands of Joey and Lee and Mike." **Doc. 3 at 124:9–13;** *see also id.* **at 123:22–23**. A day later, Joseph Frontiere emailed Peters the promissory note from Tarsin with his brother, Nicholas, copied on the email. **Docs. 184-14, 184-15.** Mr. Ghiselli testified that he was aware of and approved the terms of the promissory note sent to Peters. **Doc. 184-19 at 177:25–178:15.**

On July 19, 2019, Nicholas Frontiere left a voicemail for Peters: "Hey Jerry, its Nicki and Joey. Just wanted to call and let you know, Joey should have sent over the documents. It's exactly what I told you, one dollar per share. I put it for 750, which is what I think you requested. Feel free to take a look at it and let us know if you have any comments. We also, Joey in particular, negotiated and also got you warrants as well so you have . . . it allows you to optionally buy more at a reduced, like I think it's 75% reduced stock price in the future when it comes out as well. So take a look and feel free to comment. Send it back if you have, want any changes, and I'll talk to you soon." **Doc. 184-12** (M4A file of voicemail from Nicholas Frontiere to Gerald Peters lodged with Court on USB drive). That day, Peters signed the promissory note agreeing to lend $750,000 to Tarsin with

3

repayment of the $750,000 plus 5% interest due in twelve months. **Doc. 184-18.** Peters's executive assistant emailed the executed note to Joseph and Nicholas. **Doc. 184-17.**

On July 24, 2019, Mr. Cellura emailed an investor pitch deck titled "Monument Lord Santa Fe 190724_be.pdf" to Joseph and Nicholas with the message "Please review this should be all that Gerald and friends and family need." **Doc. 184-20.** Joseph then emailed the pitch deck to Peters and Nicholas with the message: "This has all the projects and I'm available to speak to the kids whenever." **Doc. 184-21;** *see also* **Doc. 184-22.** Soon after emailing the pitch deck, Joseph had also texted Peters: "I sent a deck with a summary of the Tarsin holdings. Tarsin owns them all and is having an [initial public offering] which you got in on early." **Doc. 184-23.** Joseph Frontiere testified during deposition that the promissory note and the pitch deck were the only documents about Tarsin that he shared with Peters. **Doc. 184-13 at 133:13–23.** Mr. Cellura testified that the information shared with Peters was left completely up to the Frontieres because Peters was a family-and-friends investor. **Doc. 184-3 at 83:19–84:05.**

On July 26, 2019, Peters wire transferred $750,000 to Tarsin. **Doc. 184-25.** That same day, Tarsin wire transferred $80,000 to Joseph Frontiere's personal bank account. **Doc. 184-26.** Neither Mr. Cellura nor Mr. Ghiselli ever met or spoke with Peters before Peters invested the $750,000. **Doc. 184-3 at 172:21–173:05.**

On September 24, 2019, Tarsin entered into an "Application Development Agreement" ("the Agreement") to pay an entity named Frontiere Technologies, Inc. $340,000 for the development of a website application called the TMIX Dashboard for Tarsin. **Doc. 184-28 at 2.** Mr. Ghiselli signed the agreement as COO of Tarsin, and Joseph Frontiere signed it as the President of Frontiere Technologies, Inc. *Id.* **at 4.** Both Joseph Frontiere and Mr. Ghiselli testified that no work was delivered to Tarsin under the Agreement. **Docs. 184-19 at 69:04–08, 184-13 at 170:11–**

4

**20.** But between September 24, 2019, and October 7, 2019, at least another $210,000 was transferred to Frontiere Technologies by Tarsin. **Doc. 184-26 at 26, 68.** Also, in September 2019, a "first installment" cashier's check for $103,000 was given to Joseph Frontiere by Tarsin. **Doc. 184-28 at 1, 7.** Mr. Ghiselli testified that he was the sole person with access and control over all Tarsin's US Bank accounts, including the account ending in 3710 that Peters wired the $750,000 to and the account ending in 3513 that the $750,000 was immediately moved into. **Doc. 184-19 at 87:21–88:06.** Peters contends all these facts are material to the question of Tarsin's joint and several liability and that they are undisputed. Defendants fail to genuinely dispute any of these facts. Accordingly, the Court relies on them to grant this motion for partial summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citation omitted). "The summary judgment standard requires [the Court] to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Id.*

"The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the moving party has done so, the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). The non-movant must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must do so by reference to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, and other materials." Fed. R. Civ. P. 56(c)(1)(A). The Court's function at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

A party *not* bearing the burden of persuasion at trial may also move for summary judgment "by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007); *see also Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). When faced with this type of challenge, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case." *SEC v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). But the nonmoving party need not definitively prove each element; rather, the nonmovant need only establish "an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). That said, "a complete failure of proof concerning an essential element of the nonmoving party's case" will entitle the movant to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

**I.    Defendants Qualify as Control Persons and Are Liable for Any Primary Federal Securities Fraud Violations by the Frontieres.**

First, Peters asserts undisputed facts allow the Court to find the Tarsin Defendants jointly and severally liable for any primary federal securities fraud violations committed by the Frontieres. Section 20(a) of the Securities Exchange Act provides for joint and several liability as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable

> jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a) (2010). Put simply, a controlling person who fails to establish a good-faith defense can be held jointly and severally liable for federal securities fraud committed by a controlled person. To make a prima facie case of control person liability, Peters must establish: (1) a primary violation of the securities laws and (2) control over the primary violator—i.e., the Frontieres—by the Tarsin Defendants. *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1118 (10th Cir. 2015). Peters does not seek a summary judgment ruling on the issue of whether a primary violation of the securities law occurred. Instead, Peters contends that undisputed facts show the Tarsin Defendants had control over the Frontieres and that they cannot establish a good-faith defense. The Court agrees and grants Peters's motion for partial summary judgment.

### A. Tarsin Defendants Fail to Genuinely Dispute Their Control Over the Frontieres.

To prevail in his motion for partial summary judgment, Peters must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" on the issue of control. Fed. R. Civ. P. 56(a). To carry his initial burden, Peters must point to undisputed facts that establish the Tarsin Defendants had "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of [the Frontieres], whether through the ownership of voting securities, by contract, or otherwise." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998) (quoting SEC's definition of "Control" in 17 C.F.R. § 240.12b-2). While some circuits require a plaintiff provide evidence that a control person was a participant in or culpable for the primary violation, the Tenth Circuit has explicitly rejected this requirement. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1109 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003) ("[W]e have 'expressly rejected those decisions that may be read

7

to require a plaintiff to show the defendant actually or culpably participated in the primary violation.'").

Undisputed facts show the Tarsin Defendants had control over the Frontieres. In June of 2019, when Defendants hired Joseph Frontiere as their Director of Corporate Finance and engaged Nicholas Frontiere as a Technology advisor, Tarsin was run by three main executives: Mr. Cellura, Mr. Ghiselli, and Mr. Hanson. **Doc. 184-1 at 7–8**; *see also* **Doc. 184-22 at 24.** Although the Tarsin Defendants gave the Frontieres broad discretion in terms of who they pursued for investments, **Doc. 184-3 at 103:06–23**, what information they shared with investors, **Doc. 184-3 at 83:19–84:05**, and how involved Nicholas would be in Tarsin, **Doc. 184-3 at 94:03–13**, Defendants still remained in direct or indirect control of the Frontieres' efforts to solicit Peters's $750,000 investment.

In his role as Tarsin's Director of Corporate Finance, Joseph Frontiere reported directly to Mr. Cellura, Tarsin's CEO. **Doc. 184-8**. And Mr. Cellura encouraged the Frontieres to pursue Peters's investment. **Doc. 184-5** ("I thought about the Gerald Peters and Lord opportunity you mentioned yesterday sounds like a good fit."). Throughout the process, the Tarsin Defendants remained highly—albeit indirectly—involved: For instance, Mr. Ghiselli emailed Peters's promissory note to Joseph Frontiere, who forwarded it to Nicholas Frontiere. **Docs. 184-9, 184-10.** Mr. Cellura also testified that his approval was required to issue a note, **Doc. 3 at 123:22–23**, and Mr. Ghiselli testified he was aware of and approved the terms of the Peters promissory note. **Doc. 184-19 at 177:25–178:15**. Finally, Mr. Cellura emailed the investor pitch deck to Joseph and Nicholas Frontiere so that it could be shared with Peters. **Doc. 184-20**.

The Tarsin Defendants' control is also evidenced by the fact Peters wire transferred $750,000 to Tarsin, **Doc. 184-25**, and the fact Mr. Ghiselli is the sole person with access and control

over all Tarsin's U.S. Bank accounts, including the account that Peters wired the $750,000 to and the account that the $750,000 was immediately moved into, **Doc. 184-19 at 87:21–88:06**.

Defendants oppose Peters's motion for partial summary judgment, but they fail to genuinely dispute these facts. Instead, Defendants argue that the Court should deny Peters's motion because there is a lack of proof of any primary liability on the part of the Frontieres. **Doc. 205 at 12**. But Peters explicitly stated that he was not seeking "a ruling on any of the elements of primary securities fraud liability," **Doc. 184 at 2,** and the Court has already concluded in two separate Memorandum Opinions and Orders, **Docs. 235, 236**, that genuine issues of material fact preclude a summary judgment ruling on the issue of primary liability. Thus, Defendants' primary liability arguments are both irrelevant and have already been ruled on by the Court.

Defendants also argue that Peters's securities fraud claims must fail because Peters cannot establish that Defendants were the proximate cause of his injuries. Proximate cause is not, however, the issue here—the issue is control. And to assess joint and several securities liability the Court asks whether the Tarsin Defendants had "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of [the Frontieres]." *Maher*, 144 F.3d at 1305. Undisputed facts show they did; Peters has established Defendants controlled the Frontieres.

### B.  Tarsin Defendants Fail to Show Facts Establishing a Good-Faith Defense.

Once a plaintiff establishes that a defendant is a control person, that defendant can still avoid being held jointly and severally liable for federal securities fraud if the defendant establishes a good-faith defense. 15 U.S.C. § 78t(a). While Peters as the plaintiff bears the burden of showing undisputed facts that Defendants had control over the Frontieres, Defendants bear the burden of establishing a good-faith defense. Peters contends undisputed material facts preclude Defendants

from raising a good-faith defense to control-person liability under the federal securities statute. The Court agrees and grants partial summary judgment in Peters's favor on this issue.

To establish a good-faith defense, a defendant must have "acted in good faith and . . . not directly or indirectly induce[d] the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). The Tenth Circuit has very little caselaw explaining what exactly a defendant must show to establish that he acted in good faith. In *Richardson v. MacArthur*, the Tenth Circuit held that the control-person company failed to show a good-faith defense because "it was incumbent upon [the company] to adopt some precautionary measures or internal controls" if they wished to show they were operating in good faith. 451 F.2d 35, 42 (10th Cir. 1971). The Second Circuit has similarly articulated a control person's burden to show good faith as requiring proof that the control person "exercised due care in his supervision of the violator's activities in that he maintained and enforced a reasonable and proper system of supervision and internal control." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996) (internal quotation marks and citations omitted). The Fifth and Eleventh Circuits have further explained that a good-faith defense to controller liability requires the control person show that he did not act recklessly. *See e.g.*, *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 960 n.27 (5th Cir. 1981); *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 725 (11th Cir. 2008). The Court finds the Second, Fifth, and Eleventh Circuits' discussions persuasive given the lack of Tenth Circuit precedent on the good-faith defense.

Accordingly, to prevail on a good-faith defense, Defendants must show they (1) "did not directly or indirectly induce the act or acts constituting the violation," 15 U.S.C. § 78t(a), and (2) acted in good faith by exercising "due care in [their] supervision of the violator's activities in that [they] maintained and enforced a reasonable and proper system of supervision and internal

control," *First Jersey Sec., Inc.*, 101 F.3d at 1473, and did not act "recklessly in failing to do what [they] could have done to prevent the violation," *Laperriere*, 526 F.3d at 725.

Defendants argue first that the Court cannot grant summary judgment on the good-faith defense because "a defendant has the right to have a jury make factual findings concerning inducement as a basis for [control person] liability," **Doc. 205 at 13,** and that if the Court were to conclude as a matter of law that the Tarsin Defendants were liable as control persons it would be "highly prejudicial" to Defendants and would result in "the loss of the Defendants' right to have a jury determine whether they were control persons responsible for a particular statement made or omission alleged as part of the primary violation by the Frontieres," *id.* **at 16.** The Court is not persuaded. Motions for partial summary judgment, like the instant one, are common means for one party or another to seek a ruling on a particular legal issue *before* the case is submitted to the jury. To avoid an adverse ruling, the Federal Rules of Civil Procedure are very clear what a party in the Tarsin Defendants' shoes must do: they must bring forward record evidence that establishes a genuine issue of material fact. Defendants fail to do this; thus, they have no right to have the issue decided by a jury.

The only record evidence Defendants point to is what appears to be Peters's testimony that he trusted the Frontieres. Defendants fail to provide the Court with a citation to the transcript they quote; thus, the Court cannot verify this evidence. But even assuming this is Peters's testimony, it is irrelevant. Peters's reliance on and trust in the Frontieres is not evidence that the Tarsin Defendants did not directly or indirectly induce the act or acts constituting the violation, nor is it evidence that Defendants acted in good faith. The Court fails to see the relevance of the referenced testimony to the issue at hand.

Defendants also attempt to rehash arguments raised in their own motion for summary judgment about Peters's alleged lack of reliance. Defendants assert that Mr. Cellura and Mr. Ghiselli could not have induced Peters to invest in Tarsin because Peters was induced based on his prior relationship with and trust in the Frontieres. But, recall, the Tenth Circuit has no requirement that a plaintiff show the defendant actually or culpably participated in the primary violation. *Adams*, 340 F.3d at 1109. Moreover, even if Defendants had brought forward evidence that they did not directly or indirectly induce the violations, Defendants must still show they acted in good faith.

On their good faith, Defendants provide no evidence or real argument. Defendants fail to carry their burden and "make a showing sufficient to establish the existence" of facts supporting a good-faith defense. *Thompson*, 732 F.3d at 1157 (quoting *Celotex*, 477 U.S. at 322). There is "a complete failure of proof concerning an essential element of the nonmoving party's" affirmative good-faith defense. *Celotex*, 477 U.S. at 322–23. Peters is therefore entitled to summary judgment.

**II.    Defendants Qualify as Control Persons, Executive Officers, and Directors and Are Liable for Any New Mexico Uniform Securities Act Violations by the Frontieres.**

Peters also contends undisputed facts allow the Court to hold Defendants jointly and severally liable for any primary securities fraud violations by the Frontieres under the Uniform Securities Act of New Mexico.[3] New Mexico's Act, like § 20(a) of the Federal Act, imposes joint and several liability on control persons. But, unlike the Federal Act, New Mexico's Act broadens the scope of joint and several liability and holds managing partners, executive officers, and directors vicariously liable as well. New Mexico's Act reads as follows:

---

[3] Peters also does not seek a summary judgment ruling on the issue of whether a primary violation of New Mexico securities law occurred.

>G. The following persons are liable jointly and severally with and to the same extent as persons liable pursuant to Subsections B through F of this section:
>
>>(1) a person that directly or indirectly controls a person liable pursuant to Subsections B through F of this section, unless the controlling person sustains the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist;
>
>>(2) an individual who is a managing partner, executive officer or director of a person liable pursuant to Subsections B through F of this section, including an individual having a similar status or performing similar functions, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist.

NMSA 1978, § 58-13C-509(G) (2010). No court—either state or federal—has previously interpreted this New Mexico statute. The Court, therefore, must predict how the New Mexico Supreme Court would interpret this statute. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). New Mexico abides by the plain meaning rule of statutory construction. Under the plain meaning rule, "when a statute contains language which is clear and unambiguous, [the Court] must give effect to that language and refrain from further statutory interpretation." *State v. Rivera*, 2004-NMSC-001, ¶ 10, 82 P.3d 939, 941 (citation and brackets omitted). The New Mexico Supreme Court, however, does not rely on "the literal meaning of a statute when such an application would be absurd, unreasonable, or otherwise inappropriate." *Id.* ¶ 13. To resolve this motion, the Court need not delve deep into statutory interpretation because the plain language of the statute and the undisputed facts make clear Peters is entitled to partial summary judgment.

First, the Court concludes the Tarsin Defendants are jointly and severally liable because undisputed facts show they directly or indirectly controlled the Frontieres and because Defendants

fail to bring forward facts showing that they, in the exercise of reasonable care, could not have known of the Frontieres' conduct. § 58-13C-509(G)(1). The first part of New Mexico's securities fraud statute closely tracks the Federal statute. *Compare* § 58-13C-509(G)(1) ("The following persons are liable jointly and severally with and to the same extent as persons liable . . . [:] a person that directly or indirectly controls a person liable pursuant to Subsection B through F . . . .") *with* 15 U.S.C. § 78t(a) ("Every person who, directly or indirectly, controls any person liable under any provision of this chapter . . . shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ."). Thus, the Court concludes the same undisputed facts that led the Court to hold that Defendants qualified as control persons under the Federal Act likewise cause the Court to hold that they are control persons under New Mexico's Act.

However, the Court's inquiry under New Mexico's Act does not stop at a control-person determination. Rather, the Court must also conclude—based on undisputed material facts—that Defendants cannot "sustain[] the[ir] burden of proof that [they] did not know, and in the exercise of reasonable care could not have known, of the existence of conduct." § 58-13C-509(G)(1). Unlike the Federal Act, New Mexico's Act does not use the terms inducement or good faith. Instead, under New Mexico's Act, Defendants bear the burden of showing they did not know and in the exercise of reasonable care could not have known of the Frontieres' conduct. New Mexico's Act speaks in terms of the Defendants' scienter, rather than their good faith and lack of inducement. Thus, to survive partial summary judgment, Defendants would need to point to evidence showing they did not know about the Frontieres' primary violations and could not have known about the Frontieres' conduct in the exercise of reasonable care. Defendants fail to specifically argue against Peters's New Mexico securities fraud claims, and Defendants fail to cite evidence on which the

Court could conclude they did not know about the Frontieres' conduct. Accordingly, Defendants again completely fail to provide proof on an issue that they bear the burden of persuasion on at trial; thus, partial summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23.

Not only is partial summary judgment appropriate under § 58-13C-509(G)(1) of New Mexico's Act, but it is also appropriate under § 58-13C-509(G)(2). Section 58-13C-509(G)(2) provides for the joint and several liability of "an individual who is a managing partner, executive officer or director of a person liable . . . including an individual having a similar status or performing similar functions, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct." Both Mr. Cellura and Mr. Ghiselli qualify as executive officers or directors of Joseph Frontiere. Mr. Cellura was the Chairman and Chief Executive Officer of Tarsin, and Mr. Ghiselli was the Chief Operating Officer, Vice Chairman of the Board, and Treasurer/Secretary of Tarsin. It is undisputed that Joseph Frontiere reported to Mr. Cellura under his employment agreement. **Doc. 184-8.** It is also undisputed that Nicholas Frontiere was part of Tarsin's "Management Team" and listed as Tarsin's "Technology Advisor." **Doc. 184-22 at 24.** Thus, both Mr. Ghiselli and Mr. Cellura qualify as executive officers or directors under the statute, and as previously discussed, not one of the Tarsin Defendants cite evidence that he/they did not know and could not have known of the Frontieres' conduct if he/they had exercised reasonable care. Therefore, undisputed facts show Tarsin Defendants are jointly and severally liable for any primary violations of New Mexico's Uniform Securities Act by the Frontieres.

## CONCLUSION

Peters's Motion for Partial Summary Judgment (**Doc. 184**) is **GRANTED** for the reasons stated in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE