**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

———————————————

GERALD PETERS,

        Plaintiff,

                                          No. 1:21-cv-00564-WJ-JMR

    v.

JOSEPH FRONTIERE, NICHOLAS
FRONTIERE, MICHAEL GHISELLI,
JOSEPH CELLURA, and TARSIN
MOBILE, INC.,

        Defendants.

JOSEPH FRONTIERE and NICHOLAS FRONTIERE,

        Cross-Claimants,

v.

MICHAEL GHISELLI, JOSEPH CELLURA,
and TARSIN MOBILE, INC.,

        Crossclaim Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 189)

**THIS MATTER** is before the Court on Plaintiff Gerald Peters' Motion for Partial Summary Judgment Finding the Frontiere Defendants Jointly and Severally Liable for any Finding of Securities Fraud at Trial (**Doc. 189**). Plaintiff Gerald Peters ("Peters") seeks a ruling on derivative, or control person, liability against Joseph Frontiere for the actions of the Tarsin Defendants[1] and against Nicholas Frontiere for the actions of his brother, Joseph Frontiere, under § 58-13C-

———————————————

[1] The Tarsin Defendants include Michael Ghiselli, Joseph Cellura, and Tarsin Mobile, Inc.

1

509(G)(3) of the New Mexico Uniform Securities Act. Having considered the parties' briefing and the applicable law, the Court **GRANTS** Peters's motion (**Doc. 189**).

**UNDISPUTED FACTS**[2]

In June 2019, Joseph and Nicholas Frontiere became involved with Tarsin Mobile Inc. ("Tarsin"). Tarsin was a technology, hospitality, and entertainment company. At the time, Tarsin had three employees: Joseph Cellura, (Chairman and Chief Executive Officer), Michael Ghiselli (Chief Operating Officer, Vice Chairman of the Board, and Treasurer/Secretary), and Lee Hanson[3] (President and Director). **Doc. 184-1 at 7–8**.

Before joining Tarsin's management team, the Frontieres took several meetings with top Tarsin executives. On June 14, Joseph Cellura—Tarsin's Chief Executive Officer—emailed Joseph Frontiere financial information about Tarsin and Lord Cultural. **Docs. 189-1, 189-2**. Lord Cultural was a company in the field of art and museums that Tarsin was considering acquiring and taking through an initial public offering. **Docs. 200-2 at 1, 200-19 at 70:12–17, 188-1 at 230:14–232:10**. Joseph Frontiere also met with Mr. Cellura and Mr. Hanson in Santa Fe, New Mexico, in mid-June. **Doc. 184-2**. Nicholas Frontiere participated in the meeting by phone. **Doc. 184-3 at 35:03–13**.

On July 1, 2019, Mr. Cellura emailed Joseph and Nicholas Frontiere a brief history of Tarsin, including an explanation that Tarsin was not a publicly reporting company. **Docs. 189-3, 184-1 at 3.** That day, Mr. Hanson also emailed Joseph and Nicholas a disclosure statement,

---

[2] The following facts are undisputed for the purposes of this motion. More background on Joseph and Nicholas Frontieres' close personal relationship with Peters as well as on the Defendants' specific alleged misrepresentations and omissions can be found in Memorandum Opinions and Orders previously issued in this case. *See* **Docs. 235, 236, 238.** The Court does not include more background facts in the instant Memorandum Opinion and Order because Peters did not include them in his list of undisputed material facts for this motion.

[3] Mr. Hanson is not a named defendant in this case. **Doc. 9.**

explaining that Tarsin had gone through bankruptcy proceedings between November 29, 2017, and January 2019. **Doc. 184-1 at 3, 4, Doc. 189-4.**

On July 8, 2019, Joseph and Nicholas emailed "Bios" to Mr. Cellura, which he edited and emailed back for their approval. **Doc. 184-4**. By July 9, 2019, the Frontieres had arranged an ownership stake in Tarsin, and Mr. Cellura emailed the Frontieres a table confirming that Nicholas had a ten percent (10%) interest, and Joseph had a five percent (5%) interest in Tarsin. **Doc. 189-7**. The table also identified "Joey Frontiere" and "Nicky Frontiere" as Tarsin executives. ***Id.***[4] That same day, Nicholas Frontiere sent his brother, Joseph, two emails with the Tarsin disclosure statement attached, **Doc. 189-5,** and Mr. Cellura sent a text message to Joseph referencing Joseph's idea that Gerald Peters could be a possible investor. **Doc. 184-5** ("I thought about the Gerald Peters and Lord opportunity you mentioned yesterday sounds like a good fit.").

On July 15, 2019, Joseph requested and attended a lunch with Peters in Santa Fe, where they discussed the opportunity for Peters to invest in Tarsin. **Docs. 184-6, 200-2 at 3.** Two days after this lunch, Mr. Cellura sent Joseph an "Executive Employment Agreement," giving Joseph the title of Tarsin's "Director of Corporate Finance." **Docs. 184-7, 184-8.** According to the employment agreement, Joseph would report to Tarsin's Chief Executive Officer, Mr. Cellura. **Doc. 184-8.** Joseph executed and returned this agreement. **Docs. 184-11, 184-12.**

In his role as Director of Corporate Finance, Joseph Frontiere engaged in raising money from family and friends. **Docs. 184-3 at 103:06–23, 184-13 at 108:22–109:25.** In this role, Joseph had the authority to pursue investments from whoever he wished and did not need to get permission from other Tarsin Executives before pursuing an investor. **Doc. 184-3 at 103:06–23.** Mr. Cellura

---

[4] Nicholas Frontiere and Joseph Frontiere are referred to in various documents as "Nicky" and "Joey."

3

also testified that Tarsin left it up to Joseph and Nicholas to decide Nicholas's involvement in Tarsin. *Id.* **at 94:03–13.** In Tarsin's investor pitch deck, both Nicholas and Joseph were listed as part of Tarsin's "Management Team," and Nicholas was listed as Tarsin's "Technology Advisor." **Doc. 184-22 at 24.**

On July 17, 2019, Tarsin Chief Operating Officer, Mr. Ghiselli, emailed Joseph a promissory note with Peters listed as the lender of $750,000. **Docs. 184-9, 184-10.** Joseph then forwarded it to Nicholas. **Doc. 184-9.** Mr. Cellura testified that his approval was required to issue a note but that "given the family relationship that was described to me, and the closeness of Gerald [Peters] and Joey's late father, [Mr. Cellura] pretty much made an exception to leave the Gerald Peters note in – totally in the hands of Joey and Lee and Mike." **Doc. 3 at 124:9–13;** *see also id.* **at 123:22–23**. A day later, Joseph emailed Peters the promissory note from Tarsin with Nicholas copied on the email. **Docs. 184-14, 184-15.** Mr. Ghiselli testified that he was aware of and approved the terms of the promissory note sent to Peters. **Doc. 184-19 at 177:25–178:15.**

On July 19, 2019, Nicholas Frontiere left a voicemail for Peters: "Hey Jerry, its Nicki and Joey. Just wanted to call and let you know, Joey should have sent over the documents. It's exactly what I told you, one dollar per share. I put it for 750, which is what I think you requested. Feel free to take a look at it and let us know if you have any comments. We also, Joey in particular, negotiated and also got you warrants as well so you have . . . it allows you to optionally buy more at a reduced, like I think it's 75% reduced stock price in the future when it comes out as well. So take a look and feel free to comment. Send it back if you have, want any changes, and I'll talk to you soon." **Doc. 184-16** (M4A file of voicemail from Nicholas Frontiere to Gerald Peters lodged with Court on USB drive). That day, Peters signed the promissory note agreeing to lend $750,000 to Tarsin

with repayment of the $750,000 plus 5% interest due in twelve months. **Doc. 184-18.** Peters' executive assistant emailed the executed note to Joseph and Nicholas. **Doc. 184-17.**

On July 24, 2019, Mr. Cellura emailed an investor pitch deck titled "Monument Lord Santa Fe 190724_be.pdf" to Joseph and Nicholas with the message "Please review this should be all that Gerald and friends and family need." **Doc. 184-20.** Joseph then emailed the pitch deck to Peters and Nicholas with the message "This has all the projects and I'm available to speak to the kids whenever." **Doc. 184-21;** *see also* **Doc. 184-22.** Soon after emailing the pitch deck, Joseph also texted Peters: "I sent a deck with a summary of the Tarsin holdings. Tarsin owns them all and is having an [initial public offering] which you got in on early." **Doc. 184-23.** Joseph Frontiere testified during deposition that the promissory note and the pitch deck were the only documents about Tarsin that he shared with Peters. **Doc. 184-13 at 133:13–23.** Mr. Cellura testified that the information shared with Peters was left completely up to the Frontieres because Peters was a family-and-friends investor. **Doc. 184-3 at 83:19–84:05.**

Joseph Frontiere testified that he could not remember exactly what he had told Peters about Tarsin but that he had repeated what Mr. Cellura had told him. **Doc. 189-10 at 112:16–20, 115:04–05, 115:11–13, 116:18–117:01, 131:21–25, 154:05–14.** Joseph also testified that he only shared documents with Peters that he was instructed to share by the Tarsin Defendants. *Id.* **at 143:22–25, 144:13–21, 146:09–14, 148:13–20, 148:25–149:05, 152:09–13, 153:02–07, 154:05–14, 155:20–156:21.** Nicholas Frontiere testified that he could not recall what documents he and Joseph shared with Peters. **Doc. 184-24 at 191:14–192:05.**

The same day the Frontieres sent the pitch deck to Peters, Mr. Hanson emailed the Frontieres updated financial information for Lord Cultural. **Docs. 189-8, 189-9.** The Frontieres did not forward this information to Peters or inform him of it. On July 25, 2019, Joseph again texted Peters to urge

him to wire the money. **Doc. 200-2.** Peters finally wired the $750,000 to Tarsin on July 26, 2019. **Doc. 184-25**. That same day, Tarsin wire transferred $80,000 to Joseph Frontiere's personal bank account. **Doc. 184-26 at 9.** Neither Mr. Cellura nor Mr. Ghiselli ever met or spoke with Peters before he invested the $750,000. **Doc. 184-3 at 172:21–173:05; Doc. 184-27 at 5:24–6:02.**

On September 24, 2019, Tarsin entered an "Application Development Agreement" to pay an entity named Frontiere Technologies, Inc. $340,000 for the development of website application called the TMIX Dashboard for Tarsin. **Doc. 184-28 at 2–3.** Mr. Ghiselli signed the agreement as Chief Operating Officer of Tarsin, and Joseph Frontiere signed it as the President of Frontiere Technologies, Inc. *Id.* **at 4.** Both Joseph and Mr. Ghiselli testified that no work was delivered to Tarsin under the Agreement. **Docs. 184-19 at 69:04–08, 184-13 at 170:11–20.** But between September 24, 2019, and October 7, 2019, at least another $210,000 was transferred to Frontiere Technologies by Tarsin. **Doc. 184-26 at 26, 68.** Also, in September 2019, a "first installment" cashier's check for $103,000 was given to Joseph Frontiere by Tarsin. **Doc. 184-28 at 1, 7.** Mr. Ghiselli testified he was the sole person with access and control over Tarsin's U.S. bank accounts, including the account ending in 3710 that Peters wired the $750,000 to and the account ending 3513 that the $750,000 was immediately moved into. **Doc. 184-19 at 87:21–88:06.** Peters contends all these facts are undisputed for the purposes of the instant motion.

As Peters correctly points out, "Nowhere in their Response do the Frontieres controvert any of Mr. Peters' statements of material fact . . . ." **Doc. 213 at 2.** Peters' undisputed material facts are therefore uncontroverted. *See* D.N.M. LR-Civ. 56.1(b) ("The response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist . . . . All material facts set forth in the [moving party's] Memorandum will be deemed undisputed unless specifically controverted."). Because Defendants fail to genuinely

dispute any of these facts, the Court relies on them to grant Peters's motion for partial summary judgment (**Doc. 189**).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citation omitted). "The summary judgment standard requires [the Court] to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Id.*

"The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the moving party has done so, the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). The non-movant must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must do so by reference to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, and other materials." Fed. R. Civ. P. 56(c)(1)(A). The Court's function at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

A party *not* bearing the burden of persuasion at trial may also move for summary judgment "by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007); *see also Celotex*, 477

U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). When faced with this type of challenge, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case." *SEC v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). But the nonmoving party need not definitively prove each element; rather, the nonmovant need only establish "an inference of the presence of each element essential to the case." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). That said, "a complete failure of proof concerning an essential element of the nonmoving party's case" will entitle the movant to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

Peters seeks a ruling on Joseph Frontiere's joint and several liability for the alleged primary violations of the Tarsin Defendants under the New Mexico Uniform Securities Act, NMSA 1978, § 58-13C-509(G)(3), and on Nicholas Frontiere's joint and several liability for the alleged primary violations of Joseph Frontiere under the same New Mexico Act. Peters does not request a ruling on primary liability. According to Peters, primary liability will be determined at trial.[5]

## I.      Joint and Several Liability under New Mexico's Uniform Securities Act

New Mexico's Uniform Securities Act provides a broader scope of joint and several liability in private securities fraud actions than its federal counterpart. While federal securities law does not hold individuals who aid and abet securities violations jointly and severally liable, *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 162 (2008) ("Aiding and abetting liability is authorized

---

[5] The Court agrees that genuine issues of material fact preclude a summary judgment ruling on primary liability. The Court previously held as much in two Memorandum Opinions and Orders denying Defendants' motions for summary judgment. **Docs. 235, 236.**

8

in actions brought by the SEC but not by private parties."), New Mexico does. Under New Mexico's Act, the following persons can be held jointly and severally liable:

> [A]n individual who is an employee of or associated with a person liable pursuant to Subsections B through F of this section and who materially aids the conduct giving rise to the liability, unless the individual sustains the burden of proof that the individual did not know and, in the exercise of reasonable care could not have known, of the existence of conduct by reason of which the liability is alleged to exist.

§ 58-13C-509(G)(3). Peters seeks to impose joint and several liability on Joseph Frontiere on the basis that he is "an employee" of the Tarsin Defendants and "materially aid[ed]" them in the alleged securities violations, and Peters seeks to impose joint and several liability against Nicholas Frontiere on the basis that he is "associated with" Joseph and "materially aid[ed]" Joseph. *Id.*

!       No court—either state or federal—has previously interpreted this provision of the New Mexico statute.[6] The Court, therefore, must predict how the New Mexico Supreme Court would interpret this provision. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). New Mexico abides by the plain meaning rule of statutory construction. Under the plain meaning rule, "when a statute contains language which is clear and unambiguous, [the Court] must give effect to that language and refrain from further statutory interpretation." *State v. Rivera*, 2004-NMSC-001, ¶ 10, 82 P.3d 939, 941 (citation and brackets omitted).

Peters contends § 58-13C-509(G)(3) "creates a presumption of joint and several derivative liability for employees or other associated people who materially aid in the actions that lead to primary liability." **Doc. 189 at 15.** The Court disagrees with Peters' reading of the statute. Under this section, Peters bears the burden of proving a primary violator's "employee" or a person

---

[6] In a related Memorandum Opinion and Order granting Peters' first motion for partial summary judgment (**Doc. 184**), this Court interpreted Section 58-13C-509(G)(1)–(2). **Doc. 238.** But neither this Court nor any other court has interpreted Subsection (G)(3).

"associated" with a primary violator "materially aid[ed] the conduct giving rise to the liability."
§ 58-13C-509(G)(3). However, defendants can avoid joint and several liability if they can "sustain[]
the[ir] burden of proof" and show they "did not know and, in the exercise of reasonable care could
not have known, of the existence of conduct by reason of which the liability is alleged to exist." *Id.*
Thus, the statute creates an affirmative defense—it does not create a rebuttable presumption.

New Mexico's Uniform Securities Act does not provide a definition of "materially aids."
NMSA 1978, § 58-13C-102 (2010). Thus, the Court must make an *Erie* guess as to how the New
Mexico Supreme Court would interpret this requirement. Some states have defined material aid or
assistance in the securities fraud context as aid that "has a natural tendency to influence, or was
capable of influencing, the decision of the purchaser." *Connecticut Nat. Bank v. Giacomi*, 242
Conn. 17, 52–53, (1997) (internal quotations omitted). Others have held material aid can only be
found if the violation would not have occurred *but for* the defendant's aid. *See e.g.*, *Fakhrdai v.
Mason*, 72 Or. App. 681, 686, 696 P.2d 1164, 1167 (1985) ("The preparation of documents without
which the 'sale would and could not have been completed or consummated' constituted evidence
from which a jury could find that the defendant 'participated or materially aided' in the illegal sale
of a security, as proscribed by the statute."). The Court need not guess which standard the New
Mexico Supreme Court would adopt because under either Peters prevails. The undisputed facts
show Joseph materially aided the Tarsin Defendants and Nicholas materially aided Joseph.

## II. Joseph Frontiere Is Jointly and Severally Liable under New Mexico's Uniform Securities Act as an Employee Who Materially Aided the Tarsin Defendants.

Peters contends undisputed facts show Joseph Frontiere is jointly and severally liable for
the alleged primary securities violations of the Tarsin Defendants as their employee who materially
aided in the violations. Peters also argues Joseph cannot prove that he did not know and in the

exercise of reasonable care could not have known of the Tarsin Defendants' actions. Peters' arguments are well taken.

Undisputed facts show Joseph Frontiere materially aided the Tarsin Defendants in their alleged violations. Joseph was instrumental to the Tarsin Defendants' securing Peters's $750,000 investment. In fact, undisputed facts show Peters's would not have invested in Tarsin were it not for Joseph and Nicholas Frontieres' solicitations. Joseph was Tarsin's "Director of Corporate Finance" and reported directly to Tarsin's Chief Executive Officer. **Docs. 184-7, 184-8.** In this role, Joseph had the authority to pursue investments from whoever he wished and did not need to get permission before pursuing an investor. **Doc. 184-3 at 103:06–23.** Joseph Frontiere first mentioned Peters to Mr. Cellura, who then sent a text message to Joseph encouraging him to pursue Peters' investment. **Doc. 184-5** ("I thought about the Gerald Peters and Lord opportunity you mentioned yesterday sounds like a good fit."). Joseph then proceeded to reach out to Peters to arrange a lunch, where he could discuss the Tarsin investment opportunity with Peters. **Docs. 184-6, 200-2 at 3.**

Undisputed facts also show that Joseph solicited Peters' investment on Tarsin's behalf. Joseph testified that the information he relayed to Peters was information he had received from Mr. Cellura. **Doc. 189-10 at 112:16–20, 115:04–05, 115:11–13, 116:18–117:01, 131:21–25, 154:05–14.** Joseph also testified he only shared documents with Peters that the Tarsin Defendants instructed him to share. *Id.* **at 143:22–25, 144:13–21, 146:09–14, 148:13–20, 148:25–149:05, 152:09–13, 153:02–07, 154:05–14, 155:20–156:21.** The Tarsin Defendants were the ones who drafted Peters' promissory note and created the pitch deck that Joseph ultimately shared with Peters. **Docs. 184-9, 184-10, 184-14, 184-15, 184-20, 184-21, 184-22.** Moreover, undisputed facts show neither Mr. Cellura nor Mr. Ghiselli met or spoke with Peters before he invested the $750,000. **Doc.**

**184-3 at 172:21–173:05; Doc. 184-27 at 5:24–6:02.** These undisputed facts establish that Joseph Frontiere materially aided the Tarsin Defendants in their alleged violations.

The Frontieres respond by arguing that they committed no primary securities violations. For instance, the Frontieres contend that none of the alleged misrepresentations are actionable because they are forward-looking statements or matters of opinion. **Doc. 204 at 8–9.** The Frontieres also maintain Peters' claim against Joseph fails because Peters cannot show Joseph intended to deceive him. But Peters need only show *scienter* to prove a primary securities violation; he does not need to show *scienter* to hold Joseph jointly and severally liable for Tarsin's alleged violations. As Peters points out, "It is no defense to Mr. Peters' motion for partial summary judgment that he does not attempt to establish a complete basis for liability"—i.e., that he does not seek a ruling on the primary securities violations. **Doc. 213 at 1.** The Court agrees. Peters does not seek a ruling on primary liability. Thus, the Frontieres cannot defend against Joseph's joint and several liability by arguing no primary securities fraud. Not to mention, the Court has already addressed these arguments in its Memorandum Opinion and Order denying the Frontieres' motions for summary judgment. **Doc. 235.**

To avoid summary judgment on this issue, Joseph Frontiere needed to bring forward evidence on which a reasonable jury could find that he "did not know, and in the exercise of reasonable care could not have known, of the existence of [the Tarin Defendants'] conduct." § 58-13C-509(G)(3). Joseph bears the burden of making this showing, yet he does not cite any record evidence on this issue. Accordingly, there is no proof on an issue that Joseph bears the burden of at trial, and partial summary judgment is appropriate. *See Celotex*, 477 U.S. at 322–23.

In sum, Joseph Frontiere is jointly and severally liable for the alleged securities violations of the Tarsin Defendants under § 58-13C-509(G)(3) because he was their employee who materially

aided in the alleged violations. The Court's ruling is, of course, contingent on findings of primary liability against one or more of the Tarsin Defendants at trial.

**III.    Nicholas Frontiere is Jointly and Severally Liable under New Mexico's Uniform Securities Act as an Associate Person Who Materially Aided Joseph Frontiere.**

Peters also moves for partial summary judgment on the issue of Nicholas Frontiere's joint and several liability for the alleged primary securities fraud of Joseph Frontiere. The Court agrees that undisputed facts establish Nicholas Frontiere is jointly and severally liable as a person associated with Joseph Frontiere who materially aided him in the alleged violations. Moreover, Nicholas fails to bring forward evidence on which a reasonable jury could conclude that he did not know and in the exercise of reasonable care could not have known of Joseph Frontiere's conduct. Accordingly, the Court grants Peters's motion for partial summary judgment on this issue.

Undisputed facts show Nicholas Frontiere was associated with his brother Joseph and materially aided him in his alleged violations of New Mexico's Uniform Securities Act. Both Nicholas and Joseph became involved in Tarsin in June of 2019. And both were given a great deal of information about Tarsin before they became Tarsin executives themselves. When Joseph met with Mr. Cellura and Mr. Hanson in Santa Fe, Nicholas participated in the meeting remotely. **Docs. 184-2, 194-3 at 35:03–13**. Both Joseph and Nicholas were included on the email Mr. Cellura sent explaining that Tarsin was not a publicly reporting company, **Docs. 189-3, 184-1 at 3,** and on the email Mr. Hanson sent explaining that Tarsin had recently gone through bankruptcy proceedings, **Doc. 184-1 at 3, 4, Doc. 189-4.** Both Joseph and Nicholas were also included on the email Mr. Hanson sent providing updated Lord Cultural profit-and-loss information. **Docs. 189-8, 189-9**.

Undisputed facts further establish Nicholas materially aided Joseph in the alleged securities fraud involving Peters' $750,000 investment in Tarsin. On July 15, 2019, Joseph attended a lunch with Peters in Santa Fe, where they discussed the opportunity for Peters to invest in Tarsin. **Docs.**

**184-6, 200-2 at 3.** Mr. Cellura testified that Tarsin left it up to Joseph and Nicholas to decide Nicholas's involvement in Tarsin. **Doc. 184-3 at 94:03–13.** But the undisputed facts show Nicholas became highly involved in the solicitation of Peters' $750,000 investment.

On July 17, 2019, Mr. Ghiselli emailed Joseph a promissory note with Mr. Peters listed as the lender of $750,000. **Docs. 184-9, 184-10.** Joseph forwarded the promissory note to Nicholas. **Doc. 184-9.** The next day, Joseph emailed Peters the promissory note and copied Nicholas on the email. **Docs. 184-14, 184-15.** The day after that, Nicholas left a voicemail for Peters: "Hey Jerry, its Nicki and Joey. Just wanted to call and let you know, Joey should have sent over the documents. It's exactly what I told you, one dollar per share. I put it for 750, which is what I think you requested. Feel free to take a look at it and let us know if you have any comments. We also, Joey in particular, negotiated and also got you warrants as well so you have . . . it allows you to optionally buy more at a reduced, like I think it's 75% reduced stock price in the future when it comes out as well. So take a look and feel free to comment. Send it back if you have, want any changes, and I'll talk to you soon." **Doc. 184-16** (M4A file of voicemail from Nicholas Frontiere to Gerald Peters lodged with Court on USB drive). Additionally, when Peters' assistant returned the executed promissory note, she emailed it to both Joseph and Nicholas. **Doc. 184-17.** Finally, Nicholas and Joseph were both listed as members of the Tarsin management team in the pitch deck, **Doc. 184-22 at 24,** and both had an ownership stake in Tarsin, **Doc. 189-7.** These facts support the conclusion that Nicholas Frontiere materially aided Joseph Frontiere in the alleged primary securities fraud violations.

New Mexico's Act allows defendants to avoid joint and several liability if they prove they "did not know, and in the exercise of reasonable care could not have known, of the existence of conduct." § 58-13C-509(G)(3). Nicholas Frontiere bears the burden of establishing this both at summary judgment and at trial. Accordingly, when faced with a summary judgment challenge,

Nicholas must point to record evidence on which the Court could reasonably infer that he did not know, nor could have known, about his brother's violations. Nicholas fails to cite any evidence in the record to support this affirmative defense; thus, he fails to meet his summary judgment burden.

The Frontieres argue Peters' motion should be denied because Peters does not provide evidence showing Nicholas knew the Tarsin Defendants' misrepresentations were false. **Doc. 204 at 13**. The Frontieres miss the point in two ways: First, they argue that Nicholas lacked the requisite *scienter* for securities fraud. This, again, is an argument that goes to whether Nicholas can be held primarily liable for securities fraud. It does not go to Nicholas's joint and several liability for Joseph's alleged securities fraud. In fact, for joint and several liability, Nicholas bears the burden of showing that he *lacked* scienter—Peters does not have to show anything. Next, the Frontieres appear to argue that Nicholas cannot be held jointly and severally liable for the Tarsin Defendants' misrepresentations. *See* **Doc. 204 at 13** ("[T]he record is devoid of any facts or evidence that Nicholas Frontiere had the requisite knowledge that the Tarsin Defendants' representations were false when they restated them to Plaintiffs."). But that is not what Peters' requests. Peters seeks to hold Nicholas jointly and severally liable for his brother's—Joseph Frontiere's—alleged misrepresentations. The Frontieres fail to address Peters' actual challenge.

Nicholas Frontiere is jointly and severally liable for any primary securities violations of Joseph Frontiere. This conclusion is contingent on a finding of primary liability against Joseph Frontiere at trial.

## CONCLUSION

Peters's Motion for Partial Summary Judgment (**Doc. 189**) is **GRANTED** for the reasons stated in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE